United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 31, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-41301

CHRISTOPHER DELEON,
Plaintiff-Appellant,

versus

CITY OF CORPUS CHRISTI,
and
BILLY COLLINS, Individually and in his official capacity,
Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas

Before JONES, Chief Judge, HIGGINBOTHAM, and CLEMENT, Circuit
Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Christopher DeLeon appeals the district court's dismissal of
his complaint as barred under *Heck v. Humphrey*.[1] DeLeon's
complaint sought damages under section 1983 from the City of Corpus
Christi[2] and its police officer, Billy Collins, for false arrest,

---

[1]512 U.S. 477 (1994).

[2]DeLeon has failed to address on appeal the district court's dismissal
of his claims against the City, which are therefore abandoned. *Yohey v.
Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

false imprisonment, malicious prosecution, illegal search and seizure, and use of excessive force. The complaint also alleged state-law claims of false arrest and imprisonment, malicious prosecution, intentional infliction of emotional distress, and assault and battery. Concluding that DeLeon's deferred adjudication by a Texas court is subject to *Heck*'s favorable termination rule, the district court dismissed with prejudice. We affirm.

I

A

Because DeLeon's complaint was dismissed under 12(b)(6) for failure to state a claim, we consider only his side of the story, which follows. DeLeon argued with his wife, and she called the police. When the police arrived, things had calmed down, and the couple told the officer that everything was fine. The responding officer, Officer Collins, insisted that Mr. DeLeon leave his home and, when DeLeon protested, Collins sprayed DeLeon's face with chemicals numerous times. As DeLeon tried to fend off the mace, Collins pulled out his baton and began swinging at DeLeon. In self defense, DeLeon grabbed the baton, and the men began fighting over it. Mrs. DeLeon grabbed the baton and threw it aside. The group moved to the kitchen, along with the DeLeon's two-year child. DeLeon eventually had Collins in a bear hug on his knees. DeLeon let Collins go and backed up to the pantry door with his hands up.

2

His small child was by his right leg, and his wife was between him and Collins. DeLeon saw Collins reach for his weapon, and as he asked him if he was going to shoot him, Collins shot at DeLeon over the shoulder of Mrs. DeLeon. Collins shot at DeLeon at least four times, and DeLeon fell to the ground. Collins again fired at the unarmed DeLeon. DeLeon was struck twice below his heart, in his side, and in his left arm. DeLeon was charged with aggravated assault of a police officer, pleaded guilty, and received a deferred adjudication. DeLeon then filed this complaint for damages against the city and Officer Collins.

B

Collins and the City each filed a motion to dismiss, or alternatively, for summary judgment, arguing that DeLeon's sentence of deferred adjudication is fatal to his claims of false arrest, false imprisonment, and malicious prosecution because he cannot show a lack of probable cause for those actions. Defendants further argued that DeLeon's claims of excessive force, state assault and battery, and the intentional infliction of emotional distress are barred by *Heck* because he pleaded guilty to striking Collins with the baton.

DeLeon responded that his deferred adjudication did not constitute a conviction and did not bar his § 1983 action.

The district court granted the motions to dismiss, ruling that DeLeon's deferred adjudication barred his section 1983 claims

3

pursuant to *Heck* because he had admitted his guilt to aggravated assault in a judicial confession. The district court also dismissed DeLeon's pendant state-law claims, in part, pursuant to *Heck*.[3] The district court concluded that all claims against Collins and the City of Corpus Christi were barred as a matter of law and that DeLeon had failed to state a claim. DeLeon filed a timely notice of appeal.

## II

## A

This appeal turns on whether a deferred adjudication in Texas is a "sentence or conviction" for the purposes of *Heck*. We hold that it is.

But first, we must first answer the contention that this court has already answered the question. In applying *Heck*, the district court noted that this circuit has "consistently held that deferred adjudication is treated as the equivalent of a conviction." These holdings, cited as well by the defendants, treat deferred adjudications as a conviction for the purposes of calculating recidivist enhancements during sentencing.[4] While these guideline cases inform our review, we are not persuaded that these cases

---

[3]On appeal, DeLeon does not distinguish between his federal and state claims and has therefore waived any argument that the state-law claims should be addressed apart from *Heck*.

[4]*See e.g., United States v. Cisneros*, 112 F.3d 1272, 1282 (5th Cir. 1997); *United States v. Joshua*, 305 F.3d 352, 353 (5th Cir. 2002); *see also Moosa v. INS*, 171 F.3d 994, 1005-06 (5th Cir. 1999) (holding that a deferred adjudication is a conviction for immigration purposes).

4

resolve our decision today. These are rather pure exercises in statutory interpretation, parsing the language of the sentencing guidelines in concluding that the guidelines anticipate "deferred prosecutions" and pleas of "nolo contendere" where "a conviction is not formally entered."[5] Likewise, our related holding in the context of the AEDPA relies heavily on federal statutory definitions which are of no moment here.[6] We have no controlling statutory direction. For although *Heck* itself sits at the intersection of our two granddaddy civil-rights statutes, it looks in its reasoning to the common law of tort.

Our decisional path begins at *Heck* itself. The *Heck* court held that a civil tort action, including an action under section 1983, is not an appropriate vehicle for challenging the validity of outstanding criminal judgments.[7] When a plaintiff alleges tort claims against his arresting officers, "the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his *conviction or sentence.*"[8] If so, the claim is barred unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

---

[5]*See Cisneros*, 112 F.3d at 1280 (quoting U.S.S.G. § 4A1.2(f)).

[6]*Caldwell v. Dretke*, 429 F.3d 521, 528 (5th Cir. 2005).

[7]*Heck*, 512 U.S. at 486.

[8]*Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000) (emphasis added and internal quotation omitted).

authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254.[9]

DeLeon argues that his suit is not barred by *Heck* because following an order deferring an adjudication of guilt in Texas, there is "no finding or verdict of guilt," and "there has been no conviction."[10] He explains that if he successfully completes his deferred adjudication period, the charge against him will be dismissed.[11]

Defendants respond that DeLeon misreads *Heck*, which directed the district court to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction *or sentence*."[12] And DeLeon was indeed sentenced, they argue, to a $2500 fine and 10 years probation under community supervision. Hence, the argument goes, because a civil judgment in favor of DeLeon would challenge the validity of this sentence, it is *Heck* barred.

This response is incomplete. The Texas courts have also explained that when adjudication is deferred, "there can be no imposition or suspension of sentence because no punishment is

---

[9]*Id.*

[10]*Ex parte Shillings*, 641 S.W.2d 538, 540 (Tex.Cr.App.1982).

[11]Records of his arrest, however, are not automatically expunged. *In re Expunction of Ramirez*, 143 S.W.3d 856, 858 (Tex.App.2004).

[12]*Heck*, 512 U.S. at 486. (emphasis added).

6

assessed."[13]  The Texas Court of Criminal Appeals has held that any probation following an order of deferred adjudication is not a sentence.[14]  In short, there is an order, but no judgment, a term defined in Texas as "the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant."[15]  The Texas Code of Criminal Procedure provides:

> when in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or a plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision.[16]

That is, after a judicial review of the evidence, including a sworn confession by DeLeon, there was a judicial finding that the evidence *substantiated* the defendants guilt beyond a reasonable doubt, but not a judicial finding of guilt.  The proceedings halted at this juncture and were then simply deferred.

---

[13]*Hammack v. State*, 963 S.W.2d 199, 200 (Tex. App. Austin 1998); *Ex parte Shillings*, 641 S.W.2d at 540; *Jordan v. State*, 36 S.W.3d 871, 876 (Tex. Crim. App. 2001); *Hurley v. State*, 130 S.W.3d 501 (Tex. App. Dallas 2004).

[14]*Ex parte Shillings*, 641 S.W.2d at 539.

[15]  Tex.Code Crim. Proc. art. 42.01, § 1.  It is more appropriate here to reference state understandings of the term "judgment" than to rely on the federal statutory definition.  This is because *Heck* relied, not upon federal statutes, but upon the common law's reluctance to undermine state court judgments of conviction with parallel civil proceedings.

[16]Tex.C.Crim.Proc. art. 42.12 § 5(a).

The Missouri Supreme Court observed of this very statute that "[t]his is unlike a conviction in name only."[17] Elevating substance over form, the Missouri Court suspended indefinitely the license of a lawyer who had been placed on deferred adjudication in Texas for a crime of moral turpitude, concluding that "[a] judicial admission that a lawyer possessed cocaine, a felony, is a matter of grave consequence,"[18] a decision not unlike that made by the drafters of the sentencing guidelines, which also punish past admissions of guilt. But the Court's language in *Heck* and its progeny protects only a conviction or sentence, "that is to say, an outstanding criminal judgment."[19]

Arguably, the Court has already extended *Heck* beyond judgments of conviction, holding in *Balisok* that it protects administrative rulings in prison disciplinary proceedings.[20] Yet in such situations, and unlike here, a *sentence* is being challenged. So the rationale of *Heck* is plainly on display — a prisoner cannot circumvent well-established procedures for challenging his sentence of confinement, whether attacking the judgment imposing the sentence or the administrative ruling declining to shorten it.[21]

---

[17]*In re Shunk*, 847 S.W.2d 789, 790 (Mo. 1993).

[18]*Id.* at 791.

[19]*Wallace v. Kato*, 127 S.Ct. 1091, 1098 (2007).

[20]*Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

[21]*See, e.g.*, *Miller v. Indiana Dept. of Corr.*, 75 F.3d 330, 331 (7th Cir. 1996).

With deferred adjudication, there is no judgment of conviction and no sentence. We remain persuaded that if *Heck*'s favorable termination rule attaches to the order issued in such proceedings, it is not as a requirement of *Balisok*.

Two arguments remain in support of *Heck*'s application to deferred adjudication. First, an order deferring adjudication, though not formally a conviction or sentence, is its functional equivalent in light of *Heck*'s rationale. Second, an order deferring adjudication is, at least, one stage in an ongoing state criminal proceeding, which *Heck*'s rationale might protect. Both arguments look beyond the "sentence or conviction" language in *Heck*, directing us to examine the meaning behind the words.

*Heck*'s favorable termination doctrine is supported by two somewhat-independent rationales, which divide the Court[22] and circuits[23] even today. One, articulated by Justice Scalia, views *Heck* foremost as a section 1983 decision, narrowing the reach of that civil-rights statute by reference to the common law of tort in

[22]*Compare Heck*, 512 U.S. at 484 *and Spencer v. Kemna*, 523 U.S. 1 (1998) *with Heck*, 512 U.S. at 492 (Souter, J. concurring) *and Spencer*, 523 U.S. at 20-21 (Souter, J., concurring) *and id.* at 21 (Ginsburg, J., concurring) *and id.* at 25 n.8 (Stevens, J., dissenting).

[23]*Compare Jenkins v. Haubert*, 179 F.3d 19, 26 (2d Cir.1999) (adopting Justice Souter's view that *Heck* should apply only when the plaintiff has access to a habeas remedy) and *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 n.3 (6th Cir.1999) and *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999) with *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 n.6 (9th Cir. 1998) (holding that *Heck* applies in all section 1983 suits regardless of the plaintiff's access to habeas) and *Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998).

1871. Another, articulated by Justice Souter, views *Heck* foremost as a habeas decision, a practical gloss on section 1983 to accommodate the habeas statute's exhaustion requirements. This circuit remains in the first camp,[24] where *Heck* stands first for "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments."[25] In short, the common law animated *Heck*, and so it lights our way today.

For the meaning of section 1983, *Heck* looks to the tort of malicious prosecution, an action unavailable at common law where there was an outstanding judgment of conviction. Actions in malicious prosecution were also dismissed, however, where there was *any* pending criminal proceeding. Hence, in a turn-of-the century case cited by the *Heck* Court, the California Supreme Court dismissed a civil suit because an information was outstanding.[26] The treatises cited by the Court also support the argument that *Heck* might attach to any criminal matter pending. Dean Bigelow explained in 1875 that "[t]he action for malicious prosecution cannot be maintained until the prosecution has terminated; for otherwise the plaintiff might obtain judgment in the one case and yet be convicted in the other, which would of course disprove the

[24]*Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000).

[25]*Heck*, 512 U.S. at 486.

[26]*Carpenter v. Nutter*, 127 Cal. 61, 59 P. 301 (1899).

10

averment of a want of probable cause."[27]  Another treatise explains

that the favorable termination requirement "avoids parallel

litigation over the issues of probable cause and guilt . . . and it

precludes the possibility of the claimant [sic] succeeding in the

tort action after having been convicted in the underlying criminal

prosecution, in contravention of a strong judicial policy against

the creation of two conflicting resolutions arising out of the same

or identical transaction."[28]

Nonetheless the Court recently refused to extend *Heck*'s

application to pending criminal matters.  In *Wallace v. Kato* the

Court held,

> We are not disposed to embrace this bizarre extension of
> *Heck*.  If a plaintiff files a false arrest claim before
> he has been convicted (or files any other claim related
> to the rulings that will likely be made in a pending or
> anticipated criminal trial), it is within the power of
> the district court, and in accord with common practice,
> to stay the civil action until the criminal case or the
> likelihood of a criminal case is ended.[29]

After urging abstention in such cases, the Court concluded, "If the

plaintiff is ultimately convicted, and if the stayed civil suit

would impugn that conviction, *Heck* will require dismissal;

otherwise, the civil action will proceed, absent some other bar to

---

[27]M.Bigelow, Leading Cases on Law of Torts 196 (1875).

[28]8 S. Speiser, C. Krause,& A. Gans, American Law of Torts § 28:5, p.24 (1991).

[29]*Wallace v. Kato*, 127 S.Ct. 1091, 1098 (2007) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996).

11

suit."[30]  So the first argument, that *Heck* applies to deferred adjudication orders issued in ongoing state criminal proceedings, lacks merit.

A second argument remains, resting on a different characterization of an order deferring adjudication, viewing it as a final judicial act, not as one stage in an ongoing criminal proceeding.  And while unknown at common law in 1871, it is fairly viewed as akin to judgments of conviction.  Deferred adjudication was not intended as a radical departure, rather, the Texas legislature enacted these procedures with "the purpose . . . to remove from existing statutes the limitations . . . that have acted as barriers to effective systems of community supervision in the public interest."[31]  And although the Texas courts have in all circumstances held that these orders are not convictions, they have been accorded finality, for instance in the appellate context, where the defendant is released on bail pending the disposition of his appeal of a deferred adjudication order, which does not become final until the appellate court's mandate issues.[32]  Likewise, although there is no finding of guilt, there is at least a judicial finding that the evidence substantiates the defendant's guilt, followed by conditions of probation that may include a fine and

---

[30]*Id.*

[31]Tex.Code Crim.Proc. art. 42.12, § 1.

[32]*See Knighton v. State*, 2007 WL 474972, (Tex.App. Beaumont, Feb. 14, 2007).

12

incarceration.[33]  We conclude that a deferred adjudication order is a conviction for the purposes of *Heck*'s favorable termination rule.[34]  This case does not require that we decide whether a successfully completed deferred adjudication, with its more limited collateral consequences under Texas law, is also a conviction for the purposes of *Heck*, and we do not decide that question.[35]

B

DeLeon next argues that, at minimum, his excessive force claim should survive, as his conviction would not be invalidated by his proving that excessive force was used well after the need for it had ceased.  The district court disagreed, ruling that DeLeon's excessive force claim was barred as a matter of law because he was "convicted" of aggravated assault on a police officer.  DeLeon attacks this "as a matter of law" ruling, noting that in a similar case we explained that "the plaintiff's claim that officers used force far greater than that required for his arrest is conceptually distinct from his conviction for assault with a deadly weapon."[36]

---

[33]Tex. Code Crim. Proc. art. 42.12, sec.5(a) ("The judge may ... require any reasonable conditions of community supervision ... that a judge could impose on a defendant placed on community supervision for a conviction that was probated and suspended, including confinement.").

[34]*See Taylor v. Gregg*, 36 F.3d 453 (5th Cir.1994) (arguing that as a policy matter "[p]rosecutors would be less willing to agree to an adjournment in contemplation of dismissal if the defendant could then turn around and sue the prosecutor under Section 1983 for malicious prosecution.").

[35]*But see McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007).

[36]*Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996); *see also Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999) (grounding its holding in the fact that self-defense is a justification defense to the crime of battery of

13

We need not judge this dispute. Contrary to DeLeon's argument on appeal, his complaint does not allege that his claims of excessive force are separable from his aggravated assault on the officer. Instead, the complaint maintains that he did nothing wrong, that he simply defended himself, against mace, baton, and then gun, as the violence escalated. The complaint alleges that while DeLeon "explained that everything was fine," Collins refused to listen and "instead unleashed his chemical spray on Mr. DeLeon." As DeLeon "was trying to fend off the blinding mace, Defendant Collins then pulled out his baton and began swinging at Mr. DeLeon." Finally, when DeLeon put his hand up in defense, "holding on" to the baton, Collins "got even angrier." Eventually, DeLeon "released Collins and backed away from him with his hands up. . . Mr. DeLeon barely had time to query 'are you going to shoot me?' before Collins did just that."

There is no alternative pleading or theory of recovery that would allow this claim for excessive force to proceed without interfering with the Texas proceeding against DeLeon for aggravated assault on an officer. Rather it is presented as a single violent encounter throughout which Collins used excessive force. DeLeon's complaint alleges that "Mr. DeLeon was seized" and was "not a suspect" and "committed no crime." He charges that he "was forced

_____

an officer); *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir. 2000) ("as in *Sappington*, *the force used* by the deputies *to restrain* Hainze, up to and including deadly force, cannot be deemed excessive.") (emphasis added).

14

to undergo police escalation . . . of the situation" by Collins, "who was present in his home without a warrant and/or sufficient justification to remain."  His excessive force claim is that "he was unlawfully assaulted, and physically beaten and shot by Defendant Collins."

DeLeon still thinks he's innocent.  His federal complaint contradicts his confession in Texas court, belying any suggestion on appeal that he has accepted his "conviction" for aggravated assault, and challenges only the shooting.  As we reasoned in a recent unpublished opinion:

> Arnold's claims are not that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistance.  Instead, Arnold claims that he did nothing wrong, but was viciously attacked for no reason. He provides no alterative pleading or theory of recovery. . . . Arnold's claims are distinguishable from excessive force claims that survive *Heck*'s bar. . . . Arnold's suit squarely challenges the factual determination that underlies his conviction for resisting an officer.  If Arnold prevails, he will have established that his criminal conviction lacks any basis.[37]

We conclude that DeLeon's excessive force claims are inseparable from the rest.

### III

Finally, DeLeon requests that we modify the district court's judgment, which dismisses his claims simply "with prejudice."  We agree that the district court's decretal language is technically

_____

[37]*Arnold v. Slaughter*, 100 Fed.Appx. 321, 324 (5th Cir. 2004) (unpublished).

15

incomplete.  A preferred order of dismissal in *Heck* cases decrees, "Plaintiffs claims are dismissed with prejudice to their being asserted again until the *Heck* conditions are met."[38]  We will modify the judgment accordingly.

IV

The district court correctly dismissed plaintiff's claims as *Heck* barred.  The dismissal is AFFIRMED, but the judgment is MODIFIED to state that DeLeon's claims are DISMISSED WITH PREJUDICE to their being asserted again until the *Heck* conditions are met.[39]  We do not decide whether DeLeon can meet the *Heck* conditions, or otherwise may pursue federal habeas relief by successfully completing his deferred adjudication.

---

[38]*Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

[39]*Id*.