# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-60863

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2013

Lyle W. Cayce
Clerk

DAWN MELISSA DAIGRE,

      Plaintiff–Appellant

v.

CITY OF WAVELAND, MISSISSIPPI, a Municipal Corporation; JAMES A. VARNELL, Chief; HENRY BOUGANIM, Officer; CLAY NECAISE, Sergeant; CHRISTOPHER ALLEN, Officer; JOSHUA POYADOU, Officer, Individually and in their official capacities as Police Officers with the City of Waveland, Mississippi,

      Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:10-CV-568

Before STEWART, Chief Judge, KING, and PRADO, Circuit Judges.

PER CURIAM:*

In this 42 U.S.C. § 1983 action, Plaintiff–Appellant Dawn Daigre appeals the district court's dismissal of her claims under the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). Officers responding to a domestic disturbance call arrested Daigre after she refused the Officers'

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60863

commands to get out of bed. She subsequently pleaded guilty to resisting arrest. She then brought suit against the City of Waveland, its police chief, and the Officers for, *inter alia*, use of excessive force and false arrest. The district court granted summary judgment in favor of the defendants. For the reasons below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On the evening of February 6, 2010, four members of the Waveland Police Department—Henry Bouganim, Christopher Allen, Joshua Poyadou, and Clay Necaise (collectively the "Officers")—responded to a 911 call by Tabatha Ann Dunkerson ("Dunkerson"). Dunkerson reported hearing a commotion in the upstairs apartment of Plaintiff–Appellant Dawn Melissa Daigre ("Daigre") and expressed concern for Daigre in light of Daigre's pregnancy.[1] The officers arrived at Daigre's apartment complex and, after conferring with Dunkerson, went upstairs to Daigre's apartment.[2] The Officers rang the doorbell and knocked on the door, but received no response. After waiting for several minutes, the officers kicked in the door, which was locked with a deadbolt, and entered the apartment. Once inside, the Officers conducted a protective sweep of the apartment with weapons drawn.

Accounts differ as to how or when the Officers entered Daigre's bedroom. Accepting Daigre's account as true, the Officers entered her bedroom with guns

---

[1] According to Daigre, she and her boyfriend had a "verbal confrontation" in her apartment, after which her boyfriend left the apartment and Daigre went into her bedroom.

[2] The parties dispute whether Dunkerson informed the Officers of Daigre's pregnancy.

No. 12-60863

and tasers drawn, and yelled at her to get down on the floor. The Officers subsequently lowered their weapons, although Officer Poyadou continued to point a taser at Daigre. Sergeant Necaise ordered her to "get the fuck out of bed," to which Daigre responded "why the fuck are y'all here?"[3] This exchange repeated several times. When Officer Poyadou approached her bed with a taser drawn, Daigre alleges that she said "[d]on't do that, I'm . . . pregnant." Sergeant Necaise proceeded to pull the covers from her bed. Sergeant Necaise and another officer then attempted to pull Daigre out of bed. Daigre resisted by pulling back, using her body weight as leverage, initiating a kind of tug-of-war. "[W]hen they pulled me, I pushed all of my body weight back. They pulled me again and I pushed all my body weight. The next time they pulled me, they slammed me into the wall." As the Officers pulled Daigre out of bed, they also tasered her. After being tasered, Daigre fell to the floor and urinated. By this time, approximately ten minutes had passed from when the Officers entered Daigre's apartment.

The Officers proceeded to handcuff Daigre, and lead her into the living room. They refused to allow her to change out of her soiled clothes, but did remove the taser barbs from her back. They also contacted paramedics to examine her. There was no further physical contact, although Daigre and Sergeant Necaise exchanged several verbal insults. The Officers continued searching the rest of the house and found a large glass pipe in Daigre's

---

[3] Although the Officers contend that they ordered Daigre to show her hands, she claims that her hands remained visible at all times.

No. 12-60863

bedroom, later determined to belong to Daigre's boyfriend, who used it to smoke marijuana. Daigre was arrested and charged with possession of drug paraphernalia, disorderly conduct, resisting arrest, and simple assault on a police officer. An ambulance took Daigre to a medical center where she underwent an ultrasound that showed the fetus appeared healthy. Afterwards, Daigre was taken to the Waveland Police Department, and then the county jail.

On February 22, 2010, Daigre initially appeared before the Waveland Municipal Court, and asked for an attorney. On March 25, after an attorney was appointed, Daigre pleaded guilty to resisting arrest in violation of Mississippi Code § 97-9-73.[4] Daigre was fined $612.00 and sentenced to sixty days in jail. Her sentence was suspended. The remaining charges were dismissed or passed to the inactive file.

Upon her release, and after unsuccessfully pursuing a complaint with the Waveland Police Department, Daigre filed the present suit on December 15, 2010, asserting numerous federal and state law claims against the Officers and Waveland Police Chief James Varnell, in their individual and official capacities, as well as the City of Waveland. Defendants–Appellees (collectively

---

[4] Mississippi Code § 97-9-73 provides:

> It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer, and any person or persons so doing shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail not more than six (6) months, or both.

4

No. 12-60863

the "City") filed a motion for summary judgment on April 13, 2012, which the district court granted on September 24, 2012. Daigre timely appealed the dismissal of her § 1983 excessive-force and false-arrest claims.

## II. STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party. *See, e.g.*, *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 284 (5th Cir. 2006). "Unsubstantiated assertions, improbable inferences, and unsupported speculation," however, "are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

### A.     Excessive Force Claim

The district court concluded that Daigre's excessive-force claim was barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because it was not separable from the facts resulting in her conviction for resisting arrest. We affirm the district court's dismissal of Daigre's excessive-force claim under *Heck* solely on the basis of Daigre's allegations, because they necessarily challenge the validity of her conviction for resisting arrest.

*Heck* prohibits a plaintiff from using a § 1983 suit to challenge the validity of his conviction or sentence, unless the plaintiff demonstrates that the conviction or sentence has in some way been reversed or invalidated. *Bush*

5

*v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). Consequently, "a plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." *Id.* at 498 n.14 (alteration omitted) (quoting *McCann v. Neilsen*, 466 F.3d 616, 621 (7th Cir. 2006)); *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). This is because "factual assertions in pleadings are . . . judicial admissions *conclusively* binding on the party that made them." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (alterations and citation omitted).

In *DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007), this Court held a plaintiff's excessive-force claims *Heck*-barred because the complaint described a single violent encounter in which the plaintiff claimed he was an innocent participant and necessarily challenged his aggravated-assault conviction. *Id.* at 656–57. By contrast, in *Bush*, this court found that a plaintiff's excessive-force claims were not barred because, although the plaintiff's complaint stated that she "[a]t no time . . . resist[ed] her arrest," when the phrase was read in context, it was clear that she was referring to conduct that occurred after she was restrained. 513 F.3d at 499 & n.18. Comparing the complaint in this case to the complaints in *DeLeon* and *Bush*, it is clear that Daigre's excessive-force claim is subject to dismissal under *Heck*.

No. 12-60863

Daigre pleaded guilty to violating Mississippi Code § 97-9-73, which prohibits "any person [from] obstruct[ing] or resist[ing] by force, or violence, or threats, or in any other manner, his lawful arrest." However, her complaint contains several statements that contradict an admission of guilt under § 97-9-73. For example, Daigre's complaint alleges, "At no time did [Daigre] physically resist or assault the Defendant Officers in any way, and the force used against her was unnecessary, unreasonable and excessive." The complaint further states that "[a]t no time during the events described . . . was [Daigre] . . . a threat to the safety of herself or others, or disorderly." Bluntly, the complaint says, "[Daigre] committed no criminal offenses." The complaint elsewhere summarizes, "[T]he Defendant Officers' assault, arrest, and detainment of [Daigre] was illegal, wrongful and false, where [Daigre] had committed no crime, and there was no need for any amount of force—excessive or otherwise—to be administered against her."

The total effect of these statements is clear: Daigre's excessive-force claim is barred because she "still thinks [she is] innocent." *DeLeon*, 488 F.3d at 657. Unlike the allegations in *Bush*, Daigre's broad claims of innocence relate to the entire arrest encounter, and not merely a discrete part of it. *See Bush*, 513 F.3d at 499. The result is dismissal under *Heck*. *See DeLeon*, 488 F.3d at 657; *see also Whatley v. Coffin*, 496 F. App'x 414, 417 (5th Cir. 2012) (per curiam) (unpublished) ("We need not determine whether [plaintiff's] excessive force claims undermine an element of his assault of a public servant convictions because the facts alleged in his complaint were inherently inconsistent with those convictions."); *Arnold v. Town of Slaughter*, 100 F.

7

App'x 321, 324 (5th Cir. 2004) (per curiam) (unpublished) (claims barred where plaintiff "claim[ed] that he did nothing wrong, but was viciously attacked for no reason").

## B.   False Arrest Claim

After reviewing the *Heck* doctrine, the district court summarily concluded that Daigre's claim of false arrest is clearly barred.  We agree.

Although "a claim of unlawful arrest, standing alone, does not *necessarily* implicate the validity of a criminal prosecution following the arrest," *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995), the *Heck* Court observed that § 1983 unlawful-arrest claims cannot lie in cases in which "[a] state defendant is convicted of and sentenced for the crime of resisting arrest . . . [because] he would have to negate an element of the offense of which he has been convicted." *Heck*, 512 U.S. at 486 n.6.  Allowing Daigre to proceed with her false-arrest claim would necessarily attack one of the grounds for her arrest because she was charged with, and ultimately pleaded guilty to, resisting arrest.  As in *Wells v. Bonner*, 45 F.3d 90 (5th Cir. 1995):

> If there was probable cause for any of the charges made—here either disorderly conduct or resisting a search—then the *arrest* was supported by probable cause, and the claim for false arrest fails.  Thus, [plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest either for disorderly conduct *or* for resisting a search, would demonstrate the invalidity of [his] conviction for resisting a search.

*Id.* at 95; *see also Thomas v. La. Dep't of Soc. Servs.*, 406 F. App'x 890, 898 (5th Cir. 2010) (per curiam) (unpublished) (false-arrest claim "would necessarily require the district court to re-evaluate the lawfulness of her arrest and

No. 12-60863

criminal conviction because proof of" false arrest would require proving that the arrest was unlawful); *Cano v. Bexar Cnty., Tex.*, 280 F. App'x 404, 408 (5th Cir. 2008) (per curiam) (unpublished) (false-arrest claim *Heck*-barred where conduct that provided probable cause to arrest also formed the basis of conviction).  For the same reason, we hold Daigre's false-arrest claim barred under *Heck*.

## IV.  CONCLUSION

For these reasons, we AFFIRM the district court's grant of summary judgment in the City's favor.