# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2022

Lyle W. Cayce
Clerk

No. 22-10303

---

Shellany Ray,

*Plaintiff—Appellant*,

*versus*

Recovery Healthcare Corporation; Alcohol Monitoring Systems, Incorporated; Glenn Tubb; The Riverside Company,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-3055

---

Before Stewart, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Shellany Ray claims her ankle monitor malfunctioned and caused a court in Dallas County to erroneously revoke her community supervision.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-10303

She sued various entities for the alleged malfunction. The district court held her claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). We affirm.

I.

A.

On January 3, 2017, Shellany Ray pleaded guilty in Dallas County to her third DWI offense and was sentenced to ten years' imprisonment. The convicting court suspended her sentence, however, and instead placed her on community supervision (probation) for seven years.[1] As a condition of her community supervision, Ray is required to abstain from consuming alcohol.

To monitor her alcohol consumption, Ray must wear an ankle monitor called a "SCRAM" device. The SCRAM device was manufactured by defendant–appellee Alcohol Monitoring Systems, Incorporated (AMS). The County contracts with defendant–appellee Recovery Healthcare Corporation (Recovery) to provide the SCRAM devices and to monitor probationers convicted of alcohol offenses. The device works by measuring the amount of alcohol that evaporates through the wearer's skin every 30 minutes. An algorithm then uses that data to approximate the wearer's blood alcohol content.

On Christmas Day in 2017, Ray's monitor detected a large amount of alcohol. Soon after, AMS and Recovery alerted Dallas County probation officials that Ray had consumed alcohol in violation of her terms of

---

[1] In Texas, probation is referred to as "community supervision." TEX. CODE CRIM. PROC. art. 42A.001(1) ("'Community supervision' means the placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by the court for a specified period during which: (A) criminal proceedings are deferred without an adjudication of guilt; or (B) a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part.").

community supervision. The state court issued a warrant for Ray's arrest. And Dallas County prosecutors filed a motion to revoke Ray's probation.

At the hearing on the prosecution's revocation motion, Ray said she didn't consume alcohol on December 25. She explained that her husband had sprayed Static Guard on their bed that day, which she argued must have been the source of the spike in alcohol vapors. But AMS and Recovery insisted that the only possible explanation for the SCRAM reading was that plaintiff had consumed a "large quantity" of alcohol. At the end of the hearing, the court modified Ray's conditions of community supervision, ordering Ray to "attend a 12-step recovery program every day for 90 days and provide proof of attendance to her probation officer."

Ray then hired a forensic criminalist named Jan Semenoff to evaluate the Christmas Day SCRAM data. Semenoff's report concluded that the SCRAM readings were far more consistent with alcohol evaporation outside the body (such as from Static Guard on bed sheets) than with alcohol metabolization inside the body (such as from alcohol consumption). Ray alleges that "after Ms. Semenoff's report was provided to prosecutors, they abandoned their efforts to revoke the Plaintiff's probation."

## B.

Ray filed suit in the Northern District of Texas, alleging a bevy of state and federal claims—including under 42 U.S.C. § 1983 for violations of her First, Fourth, Fifth, and Fourteenth Amendment rights; under 18 U.S.C. § 1964 for racketeering; and under Texas state law for violations of the Texas Deceptive Trade Practices Act as well as for negligence, gross negligence, strict liability, fraud, and intentional infliction of emotional distress. The crux of her claims was that the SCRAM device incorrectly reported that Ray consumed alcohol on Christmas Day. Ray contended that, absent the

No. 22-10303

defendants' misconduct, the district court would not have modified her community supervision.

The district court held that Ray's claims were barred by *Heck v. Humphrey*. Ray timely appealed. We have jurisdiction under 28 U.S.C. § 1291. Our review is *de novo. Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656, 658 (5th Cir. 2022) (per curiam).

## II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint fails to state a claim where it demands relief barred by *Heck v. Humphrey. E.g.*, *Crittindon v. LeBlanc*, 37 F.4th 177, 190 (5th Cir. 2022). In *Heck*, the Supreme Court held that courts cannot entertain civil suits if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487.[2] That is because "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Colvin v. LeBlanc*, 2 F.4th 494, 498 (5th Cir. 2021) (quoting *Heck*, 512 U.S. at 486). If a judgment for plaintiff would imply that his conviction or sentence was invalid, the court must dismiss the claim "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* This is sometimes called the "favorable termination" exception. *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Plaintiffs can demonstrate

---

[2] Ray never disputes that a favorable judgment on any of her claims would imply the invalidity of the January 24 modification order requiring her to attend the 12-step recovery program. Likewise, everyone assumes the *Heck* analysis applies to all Ray's claims—state and federal—with equal force, so we assume that to be the case without deciding it to be so.

favorable termination by, *inter alia*, "prov[ing] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87.

Ray asserts that *Heck* does not apply because the state court's modification order was not a "conviction or sentence" for *Heck* purposes. And even if it were, Ray contends the probation revocation proceeding terminated in her favor when the prosecutors withdrew their motion to revoke Ray's probation. We address and reject each contention in turn.

A.

Although we have yet to articulate a definitive test for when a judicial action constitutes a "conviction or sentence" under *Heck*, we have created some guidelines. In *DeLeon v. City of Corpus Christi*, for example, we held that "a deferred adjudication in Texas is a 'sentence or conviction' for the purposes of *Heck*." 488 F.3d 649, 652 (5th Cir. 2007). In *Jackson v. Vannoy*, we held that *Heck* barred claims that would imply the invalidity of a successful parole revocation proceeding. 49 F.3d 175, 177 (5th Cir. 1995) (per curiam). And in *Morris v. Mekdessie*, we applied *Heck* to bar claims that would invalidate the defendant's participation in a pretrial diversion program. 768 F. App'x 299, 300–01 (5th Cir. 2019). The results in *DeLeon*, *Jackson*, and *Morris* were all required by *Heck*'s protection of the "finality and consistency" of criminal judgments from undue "collateral attack." *Heck*, 512 U.S. at 484–85.

*DeLeon* is particularly instructive. Although a deferred adjudication order is not considered a "conviction or sentence" under state law, we nevertheless decided that *Heck* barred DeLeon's civil claims. *See DeLeon*, 488 F.3d at 656 ("[A]lthough the Texas courts have in all circumstances held

that these orders are not convictions, . . . [w]e conclude that a deferred adjudication order is a conviction for the purposes of *Heck*."). We did so to vindicate the concerns that animated *Heck*—namely, that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. We found compelling the fact that the deferred adjudication order bore important similarities to sentences and convictions. Namely, the deferred adjudication order was (1) a "final judicial act," (2) preceded by a "judicial finding that the evidence substantiates the defendant's guilt," and (3) accompanied by probation conditions that resemble the consequences of a conviction or sentence. *DeLeon*, 655–56. Allowing DeLeon to "attack" his deferred adjudication order via § 1983 would undermine *Heck* and its "concerns for finality and consistency." *Heck*, 512 U.S. at 484–85.

Everyone agrees that under *Heck* and *DeLeon*, Ray cannot bring civil claims that would imply the invalidity of her 2017 DUI conviction or her initial probation order. (That's true even though a probation order is not a "sentence or conviction" under Texas law.) The parties part company, however, over whether the January 2018 modification order requiring Ray to attend a 12-step recovery program for 90 days is a "sentence or conviction" under *Heck*.

We agree with the district court that the modification order bears the same three similarities that *DeLeon* articulated and thus should be considered a "sentence or conviction" for *Heck* purposes. First, the order is "final" in the sense that it was "wholly within the state court's discretionary power, could not be appealed, and otherwise effectively left Ray with no other option than to comply."[3] Second, probation revocation hearings carry relevant

---

[3] We reject Ray's attempt to liken her probation revocation hearing to a preliminary, non-final probable cause hearing. Nothing in the modification order remotely

No. 22-10303

indicia of criminal proceedings: "the State is represented by a prosecutor," "the defendant does have a right to counsel," "the hearing is before the judge," "formal rules of evidence do apply," and the judge makes an ultimate finding whether the probationer violated her terms of probation. *Ex parte Doan*, 369 S.W.3d 205, 210 (Tex. Crim. App. 2012); Tex. Code Crim. Proc. art. 42A.752(a). Finally, the modification order added "conditions"—namely, the 12-step program—that are akin to a sentence. Tex. Code Crim. Proc. art. 42A.752(a).

We also agree with the defendants that treating the initial probation determination—which *DeLeon* held is a "conviction or sentence" under *Heck*—differently than modifications to that determination would create an artificial distinction in *Heck*'s otherwise cohesive framework. This argument tracks Texas law, which considers revocation proceedings and modification orders as extensions of the original probation order. Indeed, "any punishment [a probationer] would receive as a result of the revocation hearing relates back to the original offense for which [the probationer] was placed on community supervision." *State v. Waters*, 560 S.W.3d 651, 659 (Tex. Crim. App. 2018).

We hold that the state court's modification order was a "conviction or sentence" for purposes of *Heck*, and hence that case bars Ray's claims.

---

suggests that the hearing was an interim probable cause determination or that the imposition of the 12-step program was a condition of release akin to bail. Regardless of Ray's speculation on the motivation or understanding of the state prosecutors, the state court itself viewed the 12-step program and the accompanying order as a "modification" to Ray's original terms of probation. Indeed, the modification order was titled "Order Modifying the Conditions of Community Supervision," and the state court declared that "the Conditions of Community Supervision in the above numbered Cause(s) are hereby modified by the Court." The court even labeled the modification condition—requiring Ray to attend the 12-step program—as condition "bb," right where the list of conditions of community supervision left off in the January 3, 2017 "Judgment of Conviction."

B.

Ray also argues that even if the modification order is a "conviction or sentence" under *Heck*, she nevertheless satisfies the favorable termination exception. Ray cites *Thompson v. Clark* for the proposition that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of . . . Fourth Amendment claim[s] under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." 142 S. Ct. 1332, 1335 (2022). And Ray argues that the prosecutors' withdrawal of their revocation motion is enough to demonstrate "favorable termination" under *Thompson*.

That is incorrect. Even if *Thompson*'s holding extended beyond the Fourth Amendment malicious prosecution context and applied to all of Ray's civil claims, Ray's situation is nothing like what happened in *Thompson*. There, Thompson was arrested and charged, but those "charges were dismissed before trial," so Thompson's "prosecution ended without a conviction." *Thompson*, 142 S. Ct. at 1335. Here, however, the prosecution's revocation motion *did* result in a hearing (akin to the "trial" in *Thompson*) where the judge evaluated the allegedly flawed SCRAM report and issued a modification order, which we've already established is a "conviction or sentence" for purposes of *Heck*. The prosecutors' withdrawal of their motion after Ray had already completed all 90 days of the 12-step program did nothing to alter or impact the court's decision.

Finally, Ray makes no showing or argument that her "conviction or sentence" has otherwise been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. Thus, she cannot satisfy the favorable termination exception as articulated by either *Heck* or *Thompson*.

No. 22-10303

AFFIRMED.