# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 31, 2023

Lyle W. Cayce
Clerk

No. 22-40281
Summary Calendar

Melvin Earl Williams, Jr.,

*Plaintiff—Appellant*,

*versus*

April Dawn McDonough; M. McGuire,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:17-CV-811

Before Jones, Haynes, and Oldham, *Circuit Judges*.

Per Curiam:*

Plaintiff-Appellant Melvin Williams challenges the district court's dismissal of his § 1983 excessive force claims pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). For the following reasons, we AFFIRM.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

## I.

On an evening in November 2015, Williams was spending time with his girlfriend, Melanie Younkman, at her home. According to Williams, they got into an argument, and he put his hands on Younkman's neck. She left and ran to the police station. Meanwhile, Williams—unaware where Younkman had gone—went to the backyard to smoke a cigarette. Shortly thereafter, Younkman and Officers McDonough and McGuire met at the house so Younkman could retrieve some of her possessions. The Officers and Younkman began talking in the driveway, prompting Williams to walk back around the side of the house.

Officer McDonough's body camera video depicts the subsequent events. When the Officers saw Williams, they asked him several times to get on the ground. Williams raised his hands and asked, "What have I done?" but did not comply. Officer McGuire attempted to grab Williams's right hand, but Williams jerked it away and attempted to flee. A prolonged physical struggle ensued, during which the Officers attempted, unsuccessfully, to detain Williams. When Williams finally wriggled away, Officer McGuire warned him that he was "about to get tased." About forty seconds later, Officer McGuire deployed her taser, striking Williams's chest and causing him to fall to the ground. Williams remained still for a few seconds, then stood back up, said "here I go, baby," and began running towards the garage. This prompted Officer McGuire to deploy her taser again, causing Williams to fall near the garage door. As Williams attempted to stand up, Officer McGuire tased him a third time, and he fell back down. When Williams began to pull himself up, it became apparent that one of the taser prongs was attached to his left eye, and Officer McDonough radioed for medical assistance. Williams then climbed to his feet and ran into the garage as the Officers again commanded him to "get down." When Williams realized he couldn't get into the house, he ran out and attempted to climb the

fence leading to the backyard. This proved impossible, so he returned to the garage. For the next several minutes, Williams repeatedly asked Younkman to let him into the house, while the Officers continued to order him to lay on the ground and submit to handcuffing. Finally, about ten minutes into the encounter, Williams complied. Williams was transported by ambulance to the hospital. As a result of the incident, he was treated for a fracture to his nasal bone, a laceration to his eye, and an irregular heartbeat.

The Officers charged Williams with resisting arrest in violation of Texas Penal Code § 38.03(a).[1] He entered a no contest plea and was sentenced to one hundred days in county jail. A few months later, Williams sued the Officers[2] pursuant to 42 U.S.C. § 1983 for using excessive force in violation of his Fourth Amendment rights. The Officers moved for summary judgment based on qualified immunity. Following a hearing, the district court sua sponte raised the issue of whether Williams's claims were barred by *Heck*, 512 U.S. at 486–87, and ordered supplemental briefing on the issue. Concluding that they were, the court granted the Officers' motions and dismissed the case. Williams timely appealed.

## II.

We review a grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 284 (5th Cir. 2003). Summary judgment is proper where there are no genuine issues of material fact and the

---

[1] A person violates this statute if he "intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest . . . of the actor . . . by using force against the peace officer or another." TEX. PENAL CODE § 38.03(a).

[2] Williams also brought separate claims against the City of Denton and Denton County, but this appeal concerns only the claims against the Officers.

movant is entitled to prevail as a matter of law. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).

## III.

The district court entered summary judgment for the Officers because it concluded that Williams's § 1983 suit improperly challenges his conviction for resisting arrest. In *Heck*, 512 U.S. at 486–87, the Supreme Court prohibited such "collateral attack[s]" in the interest of finality and consistency. *See generally Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) (quoting *Heck*, 512 U.S. at 486–87). Accordingly, a plaintiff may not bring a § 1983 suit if success on the claim would necessarily imply the invalidity of a prior criminal conviction.[3] *Id.* Rather, the plaintiff must challenge the conviction directly. *Id.*

Determining whether an action is *Heck*-barred is "fact-intensive" and requires the court to analyze whether success on the § 1983 claim "requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). In other words, if the conviction and successful § 1983 claim can co-exist, *Heck* is no bar to suit. *See Poole v. City of Shreveport*, 13 F.4th 420, 426–27 (5th Cir. 2021).

Williams contends that he can succeed on his excessive force claims without undermining his resisting arrest conviction because each relies on "temporally and conceptually distinct" factual allegations. *See Bush*, 513 F.3d at 498. Per Williams, the sole act of pulling his hand away when Officer McGuire tried to handcuff him provided the basis for his conviction. His

---

[3] The only exceptions—inapplicable here—are if the prior conviction has been overturned, expunged, declared invalid by an authorized tribunal, or called into question through issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 487.

excessive force claim, in turn, challenges the Officers' *subsequent* conduct after he ceased resisting arrest—including the Officers' repeated use of the taser. *See id.* (noting that "a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance"). In other words, Williams (now) admits to resisting arrest at the beginning of the encounter. But he claims that afterwards—when the Officers tased him—he was fully compliant.

This argument—which relies on a flawed post hoc rationalization—fails for several reasons. First, it is belied by the Officers' probable cause affidavit, which describes Williams's conduct *throughout* the encounter. Williams avers that the affidavit is no evidence of the factual basis of the conviction. But that's incorrect. The *very purpose* of a probable cause affidavit is to describe the factual allegations justifying an arrest. *See Franks v. Delaware*, 438 U.S. 154, 165 (1978) (noting that a probable cause affidavit "must set forth particular facts and circumstances underlying the existence of probable cause"). Indeed, we have previously relied on similar types of evidence to discern the factual allegations underlying a conviction. *See, e.g.*, *Aucoin v. Cupil*, 958 F.3d 379, 381 (5th Cir. 2020) (relying on prison disciplinary reports to "understand the basis of the underlying conviction"); *Knox v. City of Gautier*, No. 21-60259, 2021 WL 5815923, at *3–4 (5th Cir. Dec. 7, 2021) (per curiam) (unpublished) (relying on the factual allegations that supported the state circuit court's affirmance of the plaintiff's conviction to discern whether his claim was *Heck*-barred).[4]

---

[4] Although *Knox* and related unpublished opinions cited herein "[are] not controlling precedent," they "may be [cited as] persuasive authority." *Ballard*, 444 F.3d at 401 n.7 (citing 5TH CIR. R. 47.5.4).

Second, even setting the probable cause affidavit aside, Williams's own allegations demonstrate that success on his § 1983 claim would invalidate his conviction. Williams's operative complaint doesn't concede that he resisted arrest at the beginning of the incident. Rather, it contends that he "*fully complied with the [Officers'] commands* and did not attempt to flee." Since such assertions in pleadings are "*conclusively* binding," *see Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (per curiam) (quotation omitted) (emphasis in original), Williams cannot now argue on appeal that he initially resisted arrest but later complied. *See Aucoin*, 958 F.3d at 383 (noting that a plaintiff's claim challenges his conviction where he "maintain[s] his innocence in the events that led up to his [] conviction"). Indeed, "[w]here a complaint describes a single violent encounter in which the plaintiff claimed he was an innocent participant[,] but the allegations are inconsistent with his conviction, *Heck* applies to bar his excessive-force claims." *Ducksworth v. Rook*, 647 F. App'x 383, 386 (5th Cir. 2016) (per curiam) (internal quotation marks and citation omitted).

Finally, were there any remaining doubt, footage from Officer McDonough's clear body camera video conclusively establishes that the Officers' taser deployments were not "subsequent, discrete" events independent from the Officers' initial attempt to handcuff Williams. *Aucoin*, 958 F.3d at 384. Rather, as discussed, the video shows that Williams persistently attempted to evade the Officers throughout the entire incident, including *after* he was tased.[5] Though the Officers repeatedly asked Williams

---

[5] Williams's deposition testimony is largely consistent with this version of events, and to the extent it's not, the clear video is dispositive. *See Curran v. Aleshire*, 800 F.3d 656, 663–64 (5th Cir. 2015) ("*Scott* instructs that a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." (quoting *Scott v. Harris*, 550 U.S. 372, 380–81) (2007)).

No. 22-40281

to get on the ground and submit to handcuffing from the moment they saw him, Williams did not comply until he was cornered in the garage nearly ten minutes later. Thus, it's clear that Williams's conviction and his claims arose from "a single violent encounter." *Daigre v. City of Waveland*, 549 F. App'x 283, 286 (5th Cir. 2013) (per curiam). Therefore, Williams's § 1983 claims constitute an impermissible collateral attack on his conviction under *Heck*, 512 U.S. at 486–87, and the district court properly entered summary judgment for the Officers.

## IV.   Conclusion

For the foregoing reasons, we AFFIRM.