IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 14, 2008

No. 05-30837

Charles R. Fulbruge III
Clerk

HOLLY BUSH

Plaintiff–Appellant

v.

RODNEY JACK STRAIN, JR, in his official capacity as Sheriff of St. Tammany Parish; DALE GALLOWAY, Detective, individually and in his official capacity as a St. Tammany Parish Sheriff Deputy; RONALD PLAISANCE, Deputy, individually and in his official capacity as a St. Tammany Parish Sheriff Deputy

Defendants–Appellees

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before BARKSDALE, BENAVIDES, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Holly Bush appeals an adverse summary judgment on her excessive force[1] and conspiracy claims against law enforcement officers, Dale Galloway and Ronald Plaisance, and a related respondeat superior claim against Sheriff Rodney Jack Strain, Jr. The district court determined that Bush's claims were

---

[1] 42 U.S.C. § 1983.

barred under Heck v. Humphrey[2] based on her conviction for resisting arrest arising from the same event upon which her civil claims are based. The judgment is affirmed in part and reversed and remanded in part.

I

Bush seeks damages for injuries she sustained after she was arrested for simple battery and resisting arrest following a disturbance at a Mandeville, Louisiana car wash. Bush contends that the arresting officer, Detective Dale Galloway, injured her by intentionally and unreasonably pushing her head into the rear window of an automobile after she was arrested, handcuffed, and compliant. The officer contends that Bush was unintentionally injured when he tried to subdue her as she resisted arrest. Bush was subsequently convicted of resisting arrest, and the issue we must decide in this case is whether Bush could prevail on her civil claims without impugning the validity of her criminal conviction. If she cannot, her civil claims are barred.[3]

There is little dispute about what occurred in this case up to the point of Bush's arrest. By all accounts, Detective Galloway was interviewing a witness when Bush walked up and greeted him. Bush overheard the witness make a comment about Bush's sister, became enraged, and threw a cup of ice water at the witness. Galloway then attempted to arrest Bush for simple battery, and when Bush was partially handcuffed, she pulled her right arm away in an apparent attempt to hit or intimidate the witness. It is at this point that the parties' versions of events diverge concerning the duration of Bush's resistance and the cause of her injuries.

Galloway testified both in his civil deposition and at Bush's resisting arrest trial that Bush continued resisting arrest while he attempted to cuff her

---

[2] 512 U.S. 477 (1994).

[3] Id. at 487.

right hand and, through Bush's attempts to get free, they both fell onto the rear window of a nearby vehicle. Galloway's testimony is corroborated in this lawsuit by his co-defendant, Detective Ronald Plaisance, who testified in his civil deposition that he arrived at the scene during the incident and witnessed Bush pull away from Galloway and collide with the vehicle while Galloway was attempting to restrain her. Both detectives assert that Plaisance had to help Galloway restrain Bush and cuff her right hand. Plaisance did not testify in the criminal proceeding.

Although Bush initially claimed that she never resisted arrest, she admitted in her deposition that she pulled away from Galloway when he attempted to arrest her. She contends, however, that she stopped resisting after Galloway grabbed her right hand and that, after she ceased her resistance and both hands were cuffed, Galloway placed his hand behind her neck and head and forced her face into the rear window of a nearby vehicle, injuring her jaw and breaking two of her teeth. Bush states that Plaisance did not assist Galloway with the arrest, but witnessed this event and helped Galloway fabricate a story to cover up the use of excessive force. Bush's version of events is corroborated by affidavits from two witnesses, Lindsay Burga and Amy Huber. Burga also testified at Bush's criminal trial.

Bush sued Galloway and Plaisance under 42 U.S.C. § 1983 for excessive force, illegal arrest, and conspiracy. She also sued Galloway and Plaisance's employer, Sheriff Strain, based on respondeat superior liability under Louisiana law. The parties consented to proceed before a magistrate judge, and the civil case proceeded contemporaneously with a state criminal case against Bush for simple battery and resisting arrest. Bush was ultimately convicted of resisting arrest and acquitted on the battery charge.

Following Bush's resisting arrest conviction, the defendants moved for summary judgment, principally arguing that Bush's claims are barred under

Heck v. Humphrey because a favorable outcome on that claim would render her resisting arrest conviction invalid. Alternatively, they argued that they were entitled to qualified immunity on the excessive force claim. The defendants did not separately challenge Strain's respondeat superior liability or the conspiracy claim. In response, Bush abandoned her illegal arrest claim based on the outcome of the criminal proceeding, but she asserted that there were unresolved fact issues bearing on both the Heck and qualified immunity issues. The magistrate judge determined that Heck barred all of Bush's claims, and therefore, did not reach the defendant's qualified immunity claim.

On appeal, Bush's legal position is basically unchanged, but she conceded at oral argument that there is no viable excessive force claim against Plaisance. The defendants continue to assert that Heck bars Bush's claims and that they are entitled to qualified immunity as a matter of law.

II

We review a summary judgment de novo, viewing the evidence in the light most favorable to the non-movant,[4] which in this case is Bush. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[5]

It is well settled under Heck that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by

---

[4] Ballard v. Burton, 444 F.3d 391, 396 (5th Cir. 2006).

[5] Id.

a federal court's issuance of a writ of habeas corpus.'"[6]   Although the Heck principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring us to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction.[7]

We applied this analytical construct in Ballard v. Burton, in which we held that a plaintiff's excessive force claim was conceptually distinct from his simple assault conviction and "could easily coexist with [the plaintiff's] conviction for simple assault . . . without calling into question any aspect of that conviction."[8] The plaintiff in Ballard was shot by Deputy Burton during a confrontation with law enforcement officers.  The plaintiff subsequently pleaded guilty to a simple assault charge against a different officer, Deputy Boling, admitting only that he put Boling in fear and that he fired his rifle several times while near law enforcement officers.[9]  The plaintiff then sued Burton for using excessive force, but his claim was dismissed on summary judgment based on Heck.  On appeal, this court concluded that Heck did not bar the excessive force claim because the plaintiff's civil claim was both conceptually and factually distinct from his criminal conviction.[10]  Critical to the court's decision was that the plaintiff's behavior satisfied the elements for simple assault against Boling, as charged in the indictment to which he pleaded guilty, both before and after Burton arrived

---

[6] Id. (quoting Heck, 512 U.S. at 486-87).

[7] See id. at 400-01 ("'[T]he Heck determination depends on the nature of the offense and of the claim.'").

[8] Id. at 401.

[9] Id. at 397-98.

[10] Id. at 401.

at the scene. As a result, "[a] finding that Burton's use of force was unreasonable would imply neither that [the plaintiff] did not attempt by physical menace to put Boling in fear of imminent bodily harm, nor that [his] assault on Boling was in necessary self defense."[11] Therefore, it was possible both that Burton's shooting of the plaintiff was objectively unreasonable, and thus excessive, and that the plaintiff had assaulted Boling.[12]

As Ballard illustrates, a § 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by Heck, if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim. Accordingly, a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance.[13] In this case, there is conflicting evidence about whether Bush was injured before or after her

---

[11] Id. at 400.

[12] Id. at 401.

[13] See generally id.; see also, e.g., Wells v. Cramer, 158 Fed. Appx. 203, 204 (11th Cir. 2005) (holding that the alleged use of excessive force after the plaintiff was arrested, restrained, and posed no threat to the officers would not necessarily implicate the validity of his criminal convictions, including one for resisting arrest); Brengettcy v. Horton, 423 F.3d 674, 683 (7th Cir. 2005) (holding that Heck did not bar the excessive force claim because the plaintiff's claim that the officer used excessive force after the plaintiff hit him did not undermine the plaintiff's conviction for aggravated battery); Smithart v. Towery, 79 F.3d 951, 952-53 (9th Cir. 1996) (reversing dismissal of excessive force claim when plaintiff alleged that the police beat him after his assault on the officers, for which he was convicted, had ended); Howard v. Del Castillo, No. 2:00-CV-3466, 2001 WL 1090797, at *4 (E.D. La. Sept. 17, 2001) (denying motions to dismiss and for summary judgment because the court could not rule out the possibility that excessive force was used after the plaintiff was in handcuffs and no longer resisting, which, if proved, would not be inconsistent with battery of an officer); cf. Martinez v. City of Albuquerque, 184 F.3d 1123, 1127 (10th Cir. 1999) ("[W]hether Martinez resisted arrest by failing to heed instructions and closing his vehicle's window on the officer's arm is likewise a question separate and distinct from whether the police officers exercised excessive or unreasonable force in effectuating his arrest."); Nelson v. Jashurek, 109 F.3d 142, 145 (3d Cir. 1997) (even though the plaintiff's resistance authorized the use of "substantial force," which was necessary to his conviction, the plaintiff could still conceivably show that the force used was greater than "substantial force," objectively unreasonable, and excessive under the circumstances).

resistance ceased, and the crux of the dispute is whether the factual basis for Bush's excessive force claim is inherently at odds with the facts actually or necessarily adjudicated adversely to Bush in the criminal proceeding.[14]

Bush was convicted of resisting arrest under LA. REV. STAT. § 14:108. The defendants do not assert that an excessive force claim could never be maintained consistently with a conviction under this statute because of the elements of the crime or the existence of any defense to the crime.[15] Rather, the defendants argue, and the magistrate judge found, that the judge in the criminal proceeding explicitly or implicitly determined that Bush was resisting arrest at the time she was injured because he explicitly credited a portion of Galloway's testimony. By finding Galloway credible as to a portion of his testimony, the defendants contend that the criminal court judge actually or necessarily credited all of Galloway's testimony, including his testimony that Bush was injured while she was resisting his efforts to handcuff her. In short, the defendants contend that the state court judge determined that the resistance was temporally inseparable from the injury.

In rendering judgment, however, the state-court judge issued very narrow fact findings:

> The Court at this time finds the defendant guilty of resisting arrest. The Court believes the officer's testimony regarding the fact

---

[14] See McCann v. Neilsen, 466 F.3d 619, 621 (7th Cir. 2006) ("[A] plaintiff's claim is Heck-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction.").

[15] Cf. Sappington v. Bartee, 195 F.3d 234, 237 (5th Cir. 1999) (noting that the plaintiff's conviction for aggravated assault under a Texas statute meant that the defendant law enforcement officer was authorized by law to use force up to and including deadly force); accord Hainze v. Richards, 207 F.3d 795, 798-99 (5th Cir. 2000); Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir.1996) ("Because self-defense is a justification defense to the crime of battery of an officer, [the plaintiff's] claim that [the defendants] used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer.").

that he advised the defendant that she was under arrest and that as he was attempting to cuff her she struggled to get free from him to strike this other person. And the witness who was called by the defense corroborates the officer's [testimony].

So, I find the defendant guilty of res[isting]. I sentence her to pay a fine of $100.00 plus costs, default of which will be fifteen (15) days in the parish jail.[16]

To sustain the conviction, the judge determined only that Bush swung out toward the witness after Galloway told her that she was under arrest. The court made no findings regarding how long Bush's resistance lasted or at what point Bush was injured. Furthermore, a review of the trial transcript reveals that the judge determined that the duration of resistance and the cause of Bush's injuries was irrelevant to the determination of whether she had resisted arrest. These are material, disputed facts pertinent to her excessive force claim that were not necessary to sustain Bush's resisting arrest conviction.

The defendants also argue, albeit inartfully, that Bush's complaint does not allege that her claims of excessive force are separable from the events underlying her resisting arrest conviction. Specifically, the defendants point to the statement in Bush's complaint that "[a]t no time did the plaintiff resist her arrest." If we were to take this statement at face value, we might agree with the defendants.[17] However, taking the statement in context, we conclude that Bush has adequately pleaded a claim for excessive force occurring after she was restrained.[18]

---

[16] Emphasis added.

[17] See DeLeon v. City of Corpus Christi, 488 F.3d 649, 656-57 (5th Cir. 2007) (declining to consider the plaintiff's argument that his claims of excessive force were separable from his aggravated assault conviction because that claim was unsupported by his complaint which presented the excessive force claim as a single violent encounter throughout which the plaintiff was wholly innocent).

[18] Paragraph 8 of Bush's Complaint avers:

We also disagree with the defendant's contention, and the magistrate judge's conclusion, that Bush has attempted to manufacture a fact issue through the use of an affidavit that contradicts prior sworn testimony. At Bush's criminal trial, Lindsay Burga testified that Bush swung out as she was being handcuffed, but after she was handcuffed Galloway "pushed her head forcefully against [the] car." The state-court judge sustained a relevancy objection to the testimony concerning how Bush was injured, but otherwise determined that Burga's testimony corroborated Galloway's testimony that "as he was attempting to cuff [Bush] she struggled to get free from him to strike this other person." In an affidavit submitted in response to the defendant's summary judgment motion, Burga similarly testified that Bush was already handcuffed and no longer resisting arrest when Galloway "forcibly slammed her into the back of a car." "When an affidavit merely supplements rather than contradicts prior . . . testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."[19] Because Burga's affidavit supplements, and is entirely consistent with, her trial testimony, the affidavit may be considered along with Bush's other evidence supporting her excessive force claim. We therefore do not reach the merits of Bush's alternative argument that Burga's affidavit should be considered because it was executed before her trial testimony, and thus, does not conflict with any prior testimony as a matter of law.

---

The plaintiff was arrested by DETECTIVE DALE GALLOWAY for simple battery of Lauren Beyl after she threw water on Beyl. While the plaintiff was handcuffed with her writs behind her back, the defendant, GALLOWAY, grabbed the plaintiff behind the neck and slammed her face into the back of a parked car, causing permanent injury . . . At no time did the plaintiff resist her arrest. The defendant, GALLOWAY, used excessive force when he restrained the plaintiff.

[19] S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 496 (5th Cir. 1996).

Because Bush has produced evidence that the alleged excessive force occurred after she stopped resisting arrest, and the fact findings essential to her criminal conviction are not inherently at odds with this claim, a favorable verdict on her excessive force claims will not undermine her criminal conviction. The magistrate judge's contrary conclusion was erroneous.

## III

Below, defendants raised qualified immunity as an alternate basis for dismissal, but the magistrate judge did not consider whether the defendants were entitled to prevail on that defense to Bush's excessive force claim. Nonetheless, on appeal, Bush argues the qualified immunity defense should fail. The defendants argue the issue is not before this court and, without addressing Bush's arguments, merely assert the evidence supports the defense. Since we could affirm summary judgment on this alternate ground if it had merit,[20] we find it prudent to address this argument now in the interest of judicial efficiency.

A government official performing discretionary functions is entitled to qualified immunity unless his conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.[21] There are two steps in the qualified immunity analysis: (1) the court first determines whether the plaintiff has alleged the violation of a statutory or constitutional right; (2) the court then determines whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[22] The court applies "current law to the first step and the law at the time of the incident to the second step, which may sometimes

---

[20] Stanley v. Trinchard, 500 F.3d 411, 428 (5th Cir. 2007).

[21] Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

[22] See Flores v. City of Palacios, 381 F.3d 391, 395 (5th Cir. 2004).

result in applying different tests to the two steps."[23] "Despite the confusion this approach creates, the Supreme Court has made clear that we are obliged to go through the first step of the analysis even if the second step shows that the law was not clearly established."[24]

Under the first step, to state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable.[25] Though some injuries are so minor that they are insufficient to satisfy the injury element as a matter of law,[26] an injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances.[27] The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally

---

[23] Id. at 395 n.3.

[24] Id. (citing Saucier v. Katz, 533 U.S. 194, 200-01 (2001)); see also Scott v. Harris, 127 S. Ct. 1769, 1774 & n.4 (2007) (declining to reconsider the wisdom of Saucier's "rigid order of battle" because it was unnecessary to do so for purposes of resolving the case at bar (internal quotation marks omitted)).

[25] Flores, 381 F.3d at 396.

[26] Id. at 397–98 (citing Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001), which held that handcuffing too tightly, without more, is not a constitutionally significant injury).

[27] Ikerd v. Blair, 101 F.3d 430, 434-35 (5th Cir. 1996); Flores, 381 F.3d at 399 n.6; see also Williams v. Bramer, 180 F.3d 699, 704 (5th Cir. 1999) (finding the plaintiff's injuries—fleeting dizziness, loss of breath, and coughing—legally insufficient when they resulted from a permissible physical search, but finding those same injuries sufficient when they resulted from a use of force that was illegitimate because motivated by malice), clarified on motion for rehearing, 186 F.3d 633, 634 (5th Cir. 1999) (clarifying that the officer's subjective intent was irrelevant to the Fourth Amendment analysis but was considered in the main opinion only as it beared on whether the plaintiff alleged conduct without an apparent law enforcement related purpose).

permissible.[28]  Specifically, the court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[29]

Here, Bush has satisfied the first step.  Under the version of events alleged by Bush and two witnesses, Burga and Amy Huber, Galloway forcefully slammed Bush's face into a vehicle when Bush was handcuffed and subdued.  There is also evidence that, as a result of Galloway's actions, Bush sustained injuries to her face, teeth and jaw and incurred significant medical expenses.  Thus, Bush has alleged injuries, resulting directly and solely from force that was excessive to the need and objectively unreasonable under the circumstances.

At the second step of the immunity inquiry, the court considers whether the officer's use of force, though a violation of the Fourth Amendment, was nevertheless objectively reasonable in light of clearly established law at the time the challenged conduct occurred.[30]  Even though an officer's use of force must be objectively unreasonable to violate constitutional rights, a defendant's violation of constitutional rights can still be objectively reasonable if the contours of the constitutional right at issue are sufficiently unclear.[31]  "The central concept is that of 'fair warning':  The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the

---

[28] Ikerd, 101 F.3d at 434.

[29] Graham v. Connor, 490 U.S. 386, 396 (1989).

[30] Glenn, 242 F.3d at 312.

[31] Saucier, 533 U.S. at 204-06 (explaining how the qualified immunity analysis in an excessive force case involves two distinct objective reasonableness inquiries—the first of which examines whether the officer's use of force was objectively reasonable in light of Fourth Amendment standards and the second of which determines whether the right was clearly established such that a reasonable officer would know the particular level of force used was excessive).

Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[32] Thus, while the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene.[33] Courts must judge the reasonableness of an officer's conduct by taking into account the "'tense, uncertain, and rapidly evolving'" circumstances in which officers must often "'make split-second judgments . . . about the amount of force that is necessary in a particular situation.'"[34] From this "on-scene perspective" rather than the "'20/20 vision of hindsight,'" courts should examine the objective reasonableness of an officer's belief that a certain degree of force was lawful under the circumstances.[35]

At the time of Bush's arrest, the law was clearly established that although the right to make an arrest "'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,'"[36] the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee.[37] Here, under Bush's account of the events, she was not resisting arrest or attempting to flee when Detective Galloway forcefully slammed her face into a nearby vehicle during her arrest, thereby causing

---

[32] Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)).

[33] Saucier, 533 U.S. at 201-02.

[34] Id. at 205 (quoting Graham, 490 U.S. at 397).

[35] Id. (quoting Graham, 490 U.S. at 396).

[36] Id. at 208 (quoting Graham, 490 U.S. at 396).

[37] Graham, 490 U.S. at 396.

significant injuries. While the Fourth Amendment's reasonableness test is "'not capable of precise definition or mechanical application,'"[38] the test is clear enough that Galloway should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained and subdued. Therefore, the defendants have not demonstrated that they are entitled to qualified immunity on Bush's excessive force claim.

* * * *

We hold that Bush's excessive force claim is conceptually distinct from the facts underlying her criminal conviction and, thus, is not barred by Heck. We also hold that the defendants have not established that they are entitled to qualified immunity. Because the defendants did not separately move for summary judgment on the conspiracy and respondeat superior claims, we REVERSE the summary judgment and REMAND for further proceedings except for the excessive force claim against Plaisance, which is AFFIRMED.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

---

[38] Id.