**Roswitha M. SAENZ, Plaintiff,**

v.

**G4S SECURE SOLUTIONS (USA), INC., Officer Jose Flores, and Alejandro Romero, Defendants.**

**EP–14–CV–244–PRM**

United States District Court,
W.D. Texas, El Paso Division.

Signed 12/20/2016

Bradley C. Gage, Law Offices of Goldberg & Gage, Woodland Hills, CA, Sam J. Legate, Oscar Mendez, Jr., Scherr Legate, PLLC, El Paso, TX, for Plaintiff.

Francisco Javier Ortega, Scott Hulse, PC, Henry J. Paoli, Scott, Hulse, Marshall, Feuille, Finger, Thurmond, James O. Darnell, Jim Darnell, P.C., El Paso, TX, for Defendants.

## ORDER DENYING MOTION TO DISMISS

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered the following filings:

- Defendant Alejandro Romero's "Motion Dismiss Plaintiff's Fourth Amended Complaint" (ECF No. 122) [hereinafter "Motion to Dismiss"], filed on May 12, 2015;[1]
- Plaintiff Roswitha M. Saenz's "Response in Opposition to Defendant Alejandro Romero's Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. 122), and Alternative Motion for Leave to File Fifth Amended Complaint" (ECF No. 126), filed on May 29, 2015;
- Defendant Romero's "Supplemental Brief to Motion to Dismiss Plaintiff's Fourth Amended Complaint" (ECF No. 159) [hereinafter "Supplemental Brief"], filed on November 28, 2016; and
- Plaintiff's "Response to Defendant Romero's Supplemental Brief in Support of Motion to Dismiss" (ECF No. 162), filed on December 10, 2016, in the above captioned cause.[2]

1. The Fifth Circuit Court of Appeals recently adjudicated Defendant Alejandro Romero's interlocutory appeal of the Court's "Order Granting in Part and Denying in Part Motions to Dismiss" (ECF No. 132) [hereinafter "Order"], filed on July 6, 1015, in the above-captioned cause. U.S. Ct. of Appeals Mandate and J., Oct. 4, 2016, ECF No. 152 [hereinafter "Fifth Circuit Judgment"]. The Fifth Circuit reversed and remanded the Court's determination that Defendant Romero did not properly invoke qualified immunity and instructed the Court to "determine on remand whether [Defendant] Romero is entitled to qualified immunity in the first instance." *Id.* at 4.

2. The Court notes that Plaintiff filed her response to Defendant Romero's Supplemental Brief one day late and on the same day that she filed her "Motion for Leave to File Plaintiffs's' [sic] Response to Defendant Romero's Supplemental Brief in Support of Motion to Dismiss" (ECF No. 161), although the Court has not yet ruled on this motion. Plaintiff is reminded that leave of Court must be requested and obtained *prior* to filing untimely documents.

After due consideration, the Court is of the opinion that Defendant Romero is not entitled to qualified immunity and that his Motion to Dismiss should be denied for the reasons set forth below.

The Court will not provide a detailed recitation of the facts and procedural history, having done so on two prior occasions. *See* Order 3–6; Order Granting in Part and Denying in Part Officer Flores's Mot. to Dismiss 2–4, Jan. 28, 2015, ECF No. 86 [hereinafter "Order on Flores Mot. Dismiss"].

## I. LEGAL STANDARD

Plaintiff asserts a § 1983 excessive-force claim against Defendant Romero.[3] In response thereto, Defendant Romero asserts that he is entitled to qualified immunity. Mot. Dismiss 6–8.

 "The doctrine of qualified immunity protects *government officials* from

3. To be sure, Plaintiff does not *explicitly* assert an excessive-force claim, as she titles her first claim for relief "Violation of Constitutional Right to be Free From Unreasonable Seizures and Deprivation of Life." Fourth Am. Compl. 12, Apr. 30, 2015, ECF No. 116. In that claim, however, Plaintiff specifically argues that Defendants Flores and Romero "used excessive force against Daniel Saenz." *Id.* at 14. This allegation has been present in Plaintiff's various complaints, dating back to her original complaint, in which she asserted that "Defendants' ... use of excessive force ... constitute[s] [a] violation[] of Daniel Saenz's civil and constitutional rights." Compl. 7, June 26, 2014, ECF No. 1. For this reason, the Court has consistently construed Plaintiff's claim as one alleging excessive-force. *See, e.g.,* Order on Flores's Mot. Dismiss 9; Order at 8–9 n.3. Defendant Romero also construes Plaintiff as asserting an excessive-force claim. Mot. Dismiss 18 ("Plaintiff also asserts a section 1983 claim against Romero for ... excessive force ....").

civil damages liability when their actions could reasonably have been believed to be legal." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)) (emphasis added). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law,' *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), and courts will not deny immunity unless 'existing precedent ... placed the statutory or constitutional question beyond debate,'" *Ashcroft v. al–Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). *Id.* "Therefore, a plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (citing *Ashcroft*, 131 S.Ct. 2080). "A court has discretion to decide which prong to consider first." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

 Moreover, generally, when considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* at 648.

"Of course, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route."

*McKenna v. Wright*, 386 F.3d 432, 436 (2nd Cir. 2004).

## II. ANALYSIS

### A. Qualified Immunity for Private Actors like Defendant Romero

The Court must first address the threshold inquiry regarding whether Defendant Romero, as a government-contracted security guard, is entitled to qualified immunity. There are two relevant Supreme Court cases that address this issue: *Richardson v. McKnight*, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) and *Filarsky v. Delia*, 566 U.S. 377, 132 S.Ct. 1657, 182 L.Ed.2d 662 (2012).

In *Richardson*, the Supreme Court held that prison guards employed by a privately-retained company to manage a state prison facility were not entitled to qualified immunity. 521 U.S. at 412, 117 S.Ct. 2100. *Richardson* provides a complex framework for determining whether private actors are entitled to qualified immunity on a case-by-case basis. It requires courts to (1) determine whether there is a "historical tradition of immunity" for the conduct that gave rise to liability and (2) consider the policies and purposes that underlie government employee immunity to determine whether those same purposes support extending immunity to the private actor. *Id.* at 404, 408–11, 117 S.Ct. 2100.

Recently, however, in *Filarsky*, the Supreme Court unanimously held that a private attorney retained by the city to conduct an internal affairs investigation of a firefighter was entitled to qualified immunity. 132 S.Ct. at 1667. While the *Filarsky* court claimed to follow the framework set forth in *Richardson*, it reached the opposite conclusion. *Id.* at 1666–67.

Thus, *Filarsky* and *Richardson* are in tension with one another, and the state of the law regarding the applicability of quali-

fied immunity to private actors is anything but clear at this point.[4] The Fifth Circuit has acknowledged this uncertainty: "The law is not established in this circuit ... as to whether private entities [such as casino security staff] are entitled to the protections of qualified immunity .... it is [not] clear whether a security guard working in concert with the police is entitled to the protections" of qualified immunity. *Walter v. Horseshoe Entm't*, 483 Fed.Appx. 884, 886 n.3 (2012). Indeed, on appeal in the present case, the Fifth Circuit declined to decide this very question: "We stress, however, that we do not rule here on whether [Defendant] Romero, as an employee of a private contractor, is entitled to qualified immunity as a threshold matter." Fifth Cir. J. 4.

Given the circuit-wide, and even national, uncertainty regarding this issue, the Court finds it unnecessary to decide the overarching question whether private security officers are entitled to qualified immunity generally. Namely, the Court concludes that Plaintiff's allegations in the present case easily overcome any qualified immunity defense to which Defendant Romero would otherwise be entitled, thereby obviating the need to decide whether privately-retained security officers, such as Defendant Romero, are entitled to qualified immunity. Hence, the Court also finds it unnecessary to resolve the vexing private-actor-qualified-immunity issue using the unclear *Richardson* framework.[5]

## B. General Qualified Immunity Analysis

Turning to whether Plaintiff has overcome Defendant Romero's claim of qualified immunity, the Court must determine

4. *See* Alex Kozinski & Andrew Bentz, *Privatization and its Discontents*, 63 Emory L.J. 263, 272 (2013) ("But what's troubling about *Filarsky* is where it leaves *Richardson* .... The tension between *Filarsky* and *Richardson* will likely cause no end of trouble."); *see also* Karen Blum et. al., *Qualified Immunity Developments: Not Much Hope Left for Plaintiffs*, 29 Touro L. Rev. 633, 640–42 (2013) ("Thus, since *Filarsky*, it is unclear whether private actors acting under color of state law and vulnerable to suit under Section 1983 are entitled to qualified immunity.") ("*Richardson* and *Filarsky* are inconsistent....") ("[I]t remains unclear how the attorney in *Filarsky* is different from the private prison guards in *Richardson* .... There will inevitably be a circuit split on this issue in the near future, and the Supreme Court will undoubtedly revisit the question") (italics added for case names) (collecting cases post-*Filarsky* with varying results in applying qualified immunity to private actors).

5. "The *Richardson* opinion, upon which lower courts principally rely, fails to address complex issues of precedent and to clarify its own logic in applying the standard. Lower courts have unsurprisingly reached contradictory results in trying to apply *Richardson*. *Richardson's* treatment of history is unclear .... The policy determination is also confusing." *Developments in the Law—State Action and the Public /Private Distinction, III. Private Party Immunity from Section 1983 Suits*, 123 Harv. L. Rev. 1266, 1270 (2010) (italics added for case names). Accordingly, "[l]ower courts have varied widely in applying *Richardson*, with the majority of cases denying qualified immunity." *Id.* at 1271; *see also* Andrew W. Weis, Note, *Qualified Immunity for "Private" § 1983 Defendants after* Filarsky v. Delia, 30 Ga. St. U. L. Rev. 1037, 1055–56 (2014) ("*Richardson* presented problems for lower courts. First *Richardson* ... specified that the inquiry into private party qualified immunity proceeds by analyzing the historical and policy bases for immunity, but failed to show to what extent these bases must be present to actually support immunity. Additionally, *Richardson* left open the question of whether a historical or policy basis alone might support immunity or whether both were required."). *Filarsky* also is not particularly helpful. Rather than clarifying the *Richardson* standard, *Filarsky* merely claims to apply it by distinguishing it and ultimately reaches the opposite result. *See Filarsky*, 132 S.Ct. at 1666–67.

whether (1) Plaintiff has alleged a violation of a clearly established constitutional right and (2) whether Defendant Romero's conduct was objectively unreasonable under clearly established law existing at the time of the incident. *See Club Retro, LLC v. Hilton,* 568 F.3d 181, 194 (5th Cir. 2009)

### 1. Clearly Established Constitutional Right

■ Plaintiff has satisfied the first prong because she has alleged that Defendant Romero used excessive force against Saenz. *See supra* note 1. As a pretrial detainee, Saenz had a Fourteenth Amendment Due Process right to be free from excessive force, and this right has been clearly established. *Graham v. Connor,* 490 U.S. 386, 395 n.10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("It is clear ... that the Due Process Clause protects a pretrial detainee form the use of excessive force that amounts to punishment."); *see also Kingsley v. Hendrickson,* — U.S. ——, 135 S.Ct. 2466, 2471–72, 192 L.Ed.2d 416 (2015) (recognizing pretrial detainee's Constitutional right to be from excessive force); *Valencia v. Wiggins,* 981 F.2d 1440, 1445 (5th Cir. 1993).

### 2. Objective Reasonableness of the Conduct under Clearly Established Law

■ Whether Plaintiff has satisfied the second prong is less straight forward. The Court must determine whether, after accepting Plaintiff's factual averments as true and viewing them in the light most favorable to her, Defendant Romero acted in an objectively reasonable manner judged against clearly established law at the time. After reviewing the parties' pleadings, the Court concludes that he did not.

■ "A Government official's conduct violates clearly established law when, at the time of the challenged conduct,

'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right. ' " *Ashcroft v. al–Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (alterations in original) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

■ When determining whether a state actor has violated a plaintiff's clearly established constitutional rights, "[t]he central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Bush v. Strain,* 513 F.3d 492, 501–02 (5th Cir. 2008) (quoting *Kinney v. Weaver,* 367 F.3d 337, 350 (5th Cir. 2004) (en banc)) (internal quotation marks omitted).

In its previous Order, the Court discerned the following factual bases for Plaintiff's excessive force claims:

First, Plaintiff alludes to a number of injuries suffered by Saenz at the hands of Defendants Romero and Flores. For example, Plaintiff contends that Defendants Romero and Flores "inflicted upon Saenz" while he was at the jail "a serious head injury, [sic] that involved a deep laceration, [sic] and profuse bleeding." She also alleges that Defendants Romero and Flores "beat, struck and injured Saenz," which resulted in "numerous marks all over his body consistent with trauma from multiple strikes from Defendants' batons, flashlights, feet, fists and other hard objects."

484

Second, in setting forth her § 1983 claim, Plaintiff asserts that Defendants Romero and Flores "used excessive force against Daniel Saenz" when they dragged "Saenz . . . cruelly, maliciously and with deliberate indifference to his medical attention [sic] . . . by his handcuffs and shoulders across the floor" while Saenz was "handcuffed, unarmed and restrained with both hands behind his back." She further contends that "[t]o further harm Daniel, the Defendants used handcuffs with a longer than usual chain between the two metal wrist clamps so that he could be dragged by defendants." The alleged dragging of Saenz lasted "for at least 18 minutes" while Saenz "was bleeding . . . profusely."

Order 12–13 (citations omitted).

The Court finds that the aforementioned actions were not objectively reasonable. Defendant Romero had "fair warning" that the conduct alleged was impermissible. Several judicial decisions suggest that tasing and beating a restrained detainee— resulting in a head laceration and profuse bleeding—and subsequently dragging him is constitutionally impermissible.

For example, in *Kitchen v. Dallas County*, the Fifth Circuit held that officers had reasonable warning that "kicking, stomping, and choking a subdued inmate would violate the inmate's constitutional rights under certain circumstances." 759 F.3d 468, 479 (5th Cir. 2014). The *Kitchen* court reasoned that "[a]s a general matter, the applicable law was clearly established [at the time of the incident in 2010] and clearly encompassed the [aforementioned] type of behavior." *Id.* at 479. In *Kitchen*, the

Fifth Circuit also highlighted as an example its decision in *Bush*, where it held "that a law enforcement officer 'should have known' that a certain degree of force was impermissible after an arrestee had already been 'restrained and subdued,' and 'was not resisting arrest or attempting to flee.'" *Id.* (citing 513 F.3d at 502).[6] Indeed, as the Fifth Circuit noted in *Kitchen* "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force." *Id.* (citing *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009); *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002); *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1394–95 (8th Cir. 1997)).

Given the foregoing Fourteenth Amendment, Fourth Amendment, and Eighth Amendment case law from within and outside this circuit, the Court concludes that on the facts currently alleged, Defendant Romero's conduct was objectively unreasonable as judged against clearly established law existing at the time of the incident. Consequently, the Court declines to find that Plaintiff's claims are barred by qualified immunity.

3. Defendant Romero's Arguments

■ Defendant Romero's qualified immunity arguments center on the weakness of Plaintiff's allegations that he dragged Saenz, completely disregarding the rest of Plaintiffs' allegations relating to kicking, hitting, and tasing. First, Defendant Romero asserts that the Court should judge his conduct from the excessive-force law as it existed at the time of the incident. Second, Defendant Romero argues that under this standard, Plaintiff has failed to

---

**6.** The Fifth Circuit acknowledged that *Bush* was decided in the Fourth Amendment context but determined that "it was nonetheless relevant to the present case" because the Fifth Circuit has "demonstrated a tendency to

'blur' the lines between Fourteenth Amendment and either Fourth or Eight Amendment excessive force standards." *Kitchen*, 759 F.3d at 479.

sufficiently state a claim of excessive force against him.

The Fifth Circuit has previously held that a pretrial detainee's excessive force claim "is subject to the same analysis as a convicted prisoner's claim for use of excessive force under the Eighth Amendment." *See Kitchen*, 759 F.3d at 477 (citing *Valencia*, 981 F.2d at 1446). Under this standard, "a constitutional violation occurs where a detention officer uses force maliciously and sadistically for the very purpose of causing harm to the pretrial detainee rather in a good faith effort to maintain or restore discipline." *Id.*

Specifically, Defendant Romero asserts that Plaintiff has failed to show that he had a malicious sadistic intent to inflict pain, harm, or punishment in dragging Saenz. Suppl. Br. 15. Instead, Defendant Romero alleges that the video shows that Defendant Romero dragged Saenz to provide him medical treatment. *Id.* at 16–17.

It is worth noting that Defendant Romero previously asserted this same argument in his original Motion to Dismiss. Mot. Dismiss 22. The Court initially disregarded this argument, noting that the Supreme Court recently "clarified that 'a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.'" Order 25 n.12 (quoting *Kingsley*, 135 S.Ct. at 2473).

In reasserting this argument, Defendant Romero contends that "contrary to the Court's original holding, the *Kingsley* objective test is not the controlling standard for analyzing excessive force claims for pretrial detainees under the Fourteenth Amendment for pretrial detainees at the time the incident in this case took place." Suppl. Br. 12. Instead, Defendant Romero argues, "the controlling authority in analyzing excessive force cases under the

Fourteenth Amendment for pretrial detainees at the time of this incident is the Fifth Circuit's subjective test under *Valencia*." *Id.* In other words, Defendant Romero asserts that the *Kingsley* objective standard should not be retroactively applied. *Id.* at 13. To support this contention, Defendant Romero cites *Harper v. Harris County, Texas*: "The Fifth has 'decisively rejected the retroactive application of new legal standards to excessive force claims involving qualified immunity and has held that the objective reasonableness of a government official's conduct must be measured with reference to the law as it existed at the time of the conduct in question.'" *Id.* at 14 (quoting 21 F.3d 597, 601 (5th Cir. 1994)).

Even if Defendant Romero is correct that the *Valencia* standard applies, the Court's conclusion remains undisturbed. In *Valencia* the Court noted that "[o]ften ... there will be no evidence of the detention facility official's subjective intent, and ... [the] determination [must be based] on objective factors suggestive of intent." 981 F.2d at 1446. The facts alleged in Plaintiff's complaint suggest that Defendants Romero and Flores acted maliciously to inflict harm, which Plaintiff alleges in her complaint: "[w]hile handcuffed, unarmed and restrained with both hands behind his back ... Daniel Saenz was *cruelly, maliciously and with deliberate indifference* to his medical attention, dragged by his handcuffs and shoulders across the floor ...." Fourth Am. Compl. 5 (emphasis added). Indeed, the Court can discern no legitimate government purpose in beating and tasing a *restrained* detainee, causing a deep laceration in his head, and then proceeding to drag him around the jail facility. In arguing that Plaintiff has failed to demonstrate an intent to harm or punish, Defendant Romero completely ignores these

allegations.[7]

Once again, Defendant Romero points to the video Plaintiff submitted with her complaint to support this contention.[8] The Court previously found the following regarding the video:

> Both parties place heavy reliance on the video but unsurprisingly reach dueling conclusions as to what it demonstrates. Plaintiff asserts that the video shows Saenz "bleeding so profusely while being dragged all around the jail that trustees had to mop up his blood from the floor." In contrast, Defendant Romero contends that "the video shows Romero dragging Daniel Saenz to the nurses in the El Paso Detention Facility so he could receive medical treatment," which demonstrated "a legitimate government purpose" on his part.
>
> . . . .
>
> [T]he Court cannot agree with Defendant Romero's argument that the video "clearly show[s]" that "Romero dragged Saenz so he could receive medical treatment from the nurses in the jail." Certainly, the video shows two people dragging a seemingly unconscious individual to an area where three nurses are present. A number of security officers on the scene also appear to engage in some sort of conversation. However, as the video contains no audio and provides only an obscured view of Defendant Romero upon his arrival at the purported nurses' station, it is impossible to ascertain Defendant Romero's intent from the video alone. At the very least, the Court cannot concur in Defendant Romero's conclusion that "the video ... contradicts Plaintiff's version of the events," such that "there is no plausible claim of excessive force against Romero." Though the video may not confirm outright Plaintiff's factual allegations,[9] neither does it undermine her allegations to the point where dismissal would be proper.

Order 18–20 (citations omitted).

The Court stands by its prior determination regarding the video evidence. Moreover, just as the Court previously concluded that Plaintiff's allegation that Defendants Flores and Romero "use[ed] handcuffs with a longer than usual chain between the two metal wrist clamps" was not raised as a stand-alone theory of liability, the Court similarly finds that Plaintiffs claim that Saenz was dragged around the jail facility was not raised as a stand-alone theory of liability either. *See* Order

---

7. In arguing that Plaintiff has failed to properly plead a § 1983, excessive-force claim, Defendant Romero attempts to liken the instant case to *Jackson v. Buckman*, a case where a pretrial detainee asserted a § 1983, excessive-force claim against two jail nurses after they dragged him to his bed, causing an injury to his back. *See* Suppl Br. 16–17 (citing and discussing 756 F.3d 1060 (8th Cir. 2014)). However, the present case is readily distinguishable from the *Jackson* case because in *Jackson*, the "dragging" actions and their ultimate consequences were essentially the only actions for which the plaintiff was seeking to hold the defendant nurses liable. To be sure, there were no allegations of beating and tasing in *Jackson*. Thus, the Court is not persuaded by Defendant Romero's invitation to rely on *Jackson*.

8. The Court has previously noted that Plaintiff asserts that the video "is a true and correct copy of the video tape from the jail," Fourth Am. Compl. 7, and Defendant Romero does not dispute this. Thus, "[b]ecause the parties agree that [the] video is accurate, [the Court] must 'view[] the facts in the light depicted by the videotape.'" *Rynearson v. United States*, 601 Fed.Appx. 302, 306 n.2 (5th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

9. For example, while one portion of the video depicts two individuals using mops to clean *something* off of the floor in one part of the jail, it is not at all clear that the "something" is blood and that the blood belonged to Saenz.

17–18. Rather, Plaintiff has alleged that Defendants Romero and Flores dragged a badly injured Saenz around after beating him, ignoring his medical needs.

Thus, Plaintiff's allegations regarding the "dragging" actions are part of a larger narrative composed of several similar facts—all of which serve to bolster her excessive-force claim. Defendant Romero himself concedes that Saenz was bleeding, unconscious, and unable to walk on his own, but references this only to argue that Defendant Romero was dragging Saenz around to get him medical attention quickly. Suppl. Br. 17. Significantly, Defendant Romero fails to recognize that Plaintiff's allegations suggest that Saenz was unconscious and bleeding precisely because of Defendants Romero and Flores's actions.

Consequently, the Court continues to hold that viewing Plaintiff's allegations in the light most favorable to her

> paints the picture of a pretrial detainee suffering from a deep laceration to his head with profuse bleeding—an injury so obvious that other medical personnel "recognize[ed] [Saenz's] serious condition" and felt that he warranted immediate medical treatment—who was dragged for eighteen minutes by his shoulders and handcuffs, which incidentally had been specifically placed on Saenz "so that he could be dragged."

Such actions allegedly "cause[d] pain and suffering to Daniel Saenz."

Order 22–23 (citations omitted). The Court further concludes that its holding that Plaintiff has sufficiently stated a cause of action for excessive force pursuant to § 1983 should not be disturbed. Finally, the Court newly holds that Plaintiff has overcome Defendant Romero's claim of qualified immunity in her complaint. Thus, the Court's ultimate conclusion regarding Defendant Romero's Motion to Dismiss remains the same.

## III. CONCLUSION

Accordingly, it is **ORDERED** that Defendant Romero is not entitled to qualified immunity.

**IT IS FURTHER ORDERED** that Defendant Romero's "Motion to Dismiss Plaintiff's Fourth Amended Complaint" (ECF No. 122) is **GRANTED IN PART AND DENIED IN PART.**[10]

**IT IS FINALLY ORDERED** that Plaintiff "Motion for Leave to File Plaintiffs's' [sic] Response to Defendant Romero's Supplemental Brief in Support of Motion to Dismiss" (ECF No. 161) is **GRANTED.**

---

**10.** Therefore, the Court's original ruling on Defendant Romero's Motion to Dismiss remains the same. The Court had previously granted the Motion to Dismiss as to Plaintiff's (1) Fourth Amendment claim, Order 9–10; (2) deprivation-of-life claim, *id.* at 10–11; and (3) negligence claims (with the exception of Plaintiff's claim for the negligent use of handcuffs), *id.* at 25–33. The Fifth Circuit did not disturb the Court's holding as to these claims; thus the Court has not addressed them here. The Court had also previously denied the Motion to Dismiss as to Plaintiff's § 1983 excessive-force claim. *Id.* at 11–25. The limited inquiry on remand is whether Defendant Romero is entitled to qualified immunity on this claim and whether that determination affects the Court's previous ruling on his Motion to Dismiss. Fifth Cir. J. 4. As outlined above, the Court concludes that Defendant Romero is not entitled to qualified immunity, and the Court's holding denying dismissal on this basis is unaffected. Consequently, Plaintiff's remaining claims against Defendant Romero are: (1) a negligence claim for his use of handcuffs; and (2) a § 1983 excessive-force claim.