# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 7, 2021

Lyle W. Cayce
Clerk

No. 21-60259

Robert Zak Knox,

*Plaintiff—Appellant*,

*versus*

City of Gautier; Brandon Price, *individually and in his official capacity*; Jeffrey Jensen, *individually and in his official capacity*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:18-CV-220

Before King, Costa, and Willett, *Circuit Judges*.

Per Curiam:[*]

Robert Zak Knox appeals the judgment of the district court dismissing his excessive force claims against the defendants-appellees. For the following reasons, the judgment is affirmed.

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-60259

## I. Factual and Procedural Background

### A. Factual Background

We begin by recounting the factual background as described in Robert Zak Knox's allegations and shown in Officer Brandon Price's body-camera footage.

1. The Allegations

On the evening of December 21, 2016, in Gautier, Mississippi, Knox heard his neighbor screaming for help. He went to assist and found that his neighbor's adult son had committed suicide—Knox then called 911. Gautier police officers Brandon Price and Jeffrey Jensen arrived at the scene to investigate; the officers were acting under a standard operating procedure that required that they treat the incident as a homicide until the crime scene was secured. The officers entered the home.

The parties dispute what happened next. Knox claims that he approached the officers hoping to assist, but they yelled at him to stay outside. He asked that an officer come outside to talk to him. The officers then closed the door in Knox's face, causing him to ask if they had a warrant to be inside the home. Then, Knox states that he started to walk away from the door when the officers suddenly rushed at him. He began to back away while the officers shouted at him to get off the property, but before he could, they placed "Knox in an arm bar . . . [took] Knox to the ground . . . [and] tazed [Knox] multiple times." He alleges they did this despite his compliance with their orders "as soon as [he] was on the ground." The defendants contest this interpretation, instead relying on Officer Price's body-camera footage.

2. The Body-Camera Footage

The district court recounted the following events based on its view of what Officer Price's camera recorded. After the officers entered the home and told Knox to stay outside,

> [i]nstead of complying with [the] officers' instructions to remain outside the home . . . the video reveals that Mr. Knox repeatedly tried to enter the house and ask the officers to speak with him. It is clear from the video that Mr. Knox does not comply with several instructions to leave the premises.
>
> Eventually, Officer Jensen approaches Mr. Knox and tries to arrest him, but Mr. Knox resists those efforts. Officer Price begins to assist, and one of the officers instructs Mr. Knox to stop resisting. Mr. Knox can be heard yelling "I'm calm" and making similar outbursts, but the video depicts that he does not cooperate with the officers. Mr. Knox struggles and shouts, "this is illegal," and "I know my rights!" The officers instruct Mr. Knox to calm down, and when he does not, Officer Jensen appears to deploy his taser. Another individual, whom it turns out is an off-duty police officer from a different police jurisdiction and is not in uniform (the "Biloxi officer"), approaches and inquires if the officers need help. One of the Gautier officers replies in the affirmative, and all three officers struggle to restrain Mr. Knox. One officer shouts multiple times for Mr. Knox to put his hands behind his back, and once the officers are able to place Mr. Knox on his stomach, he continues to struggle as they try to handcuff him behind his back.

No. 21-60259

At the approximate timestamp of 21:48:32 on the video, Mr. Knox is finally handcuffed behind his back. Officer Jensen immediately stands up and walks away from Mr. Knox and toward the decedent's house, leaving only the Biloxi officer and Officer Price with Mr. Knox. Mr. Knox states that he "can't breath," and the officers tell him numerous times to calm down and relax. The Biloxi officer rolls Mr. Knox onto his side and directs him to concentrate on his breathing, and then helps Mr. Knox up into a seated position on the ground.

A third unidentified uniformed Gautier officer (the "third officer") arrives, and Officer Price leaves Mr. Knox handcuffed in the seated position with the third officer and the Biloxi officer. Mr. Knox can be heard continuing to shout while seated in the yard, but at this point Officers Price and Jensen are near the front door of the home and nowhere near Mr. Knox. After taking about 20 seconds to catch his breath, Officer Price returns to the yard where Mr. Knox is seated, as Mr. Knox continues to shout about the handcuffs, not being able to breath, and his living across the street.

At this point, the Biloxi officer appears to be the only one with his hands on Mr. Knox, and he helps Mr. Knox stand by placing his hands under Mr. Knox's arms. The Biloxi officer then assists Mr. Knox in the direction of a marked police vehicle, and the third officer eventually takes over and walks Mr. Knox to the patrol car. At this point Officer Price is apparently beside them as he walks toward the vehicle as well.

Once outside the patrol car, Mr. Knox is bent over near the trunk of the car, with his hands handcuffed behind his back,

as the third officer has his right arm under Mr. Knox's left arm. Officer Price appears to open the back door of the car. The third officer places Mr. Knox in the backseat of the car, and Officer Price's body camera reflects that he walks away from the vehicle while speaking with the Biloxi Officer. Officer Price returns to Mr. Knox's neighbor's home, where Officer Jensen is waiting for him.

The record does not reflect any further interactions between the defendant-officers and Knox.

## B. Procedural Background

1. Criminal Proceedings

After this incident, Knox was charged and convicted of disorderly conduct and resisting arrest in the Gautier Municipal Court under Mississippi Code Annotated §§ 97-35-7 and 97-9-73 respectively. Knox appealed his convictions to the County Court of Jackson County, Mississippi, which affirmed, and then to the Circuit Court of Jackson County, Mississippi, which also affirmed.

The circuit court explained: "[I]t is clear that Knox's actions may have led to a breach of the peace. Knox had to be subdued by two officers with one deploying his taser and one off-duty officer. The Court finds those circumstances satisfy the elements of obstructing or resisting lawful arrest." The circuit court further credited the testimony of the officers, who testified that, "Jensen attempted to detain Knox by placing handcuffs on him at which point Knox resisted. Knox began thrashing around and yelling at the officers that what they were doing was illegal" and that "[d]espite Knox's claim that he was not resisting . . . his actions were non-compliant. Officer Price felt it necessary to use the drive-stun feature of his taser to subdue Knox. Knox

5

continued to resist. . . . It took all three officers to detain Knox." These convictions remain final and valid.

2. Civil Proceedings

While his criminal appeals were ongoing, Knox filed a civil suit in Mississippi state court against the City of Gautier and Officers Price and Jensen (collectively, the "defendants"). The defendants removed the case to the District Court for the Southern District of Mississippi, which stayed the case pending resolution of the criminal appeals. On May 8, 2020—after the circuit court affirmed the convictions—the district court lifted the stay. Knox proceeded to file an amended complaint claiming that the defendants violated his rights under the Fourth and Fourteenth Amendments for use of excessive force, as well as various state-law claims. Knox further claimed that the City of Gautier violated 42 U.S.C. § 1983 by failing to train and supervise the officers.

The defendants all filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). They argued that the excessive force claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The officers also claimed that, in the alternative, they were entitled to qualified immunity. The district court treated these motions as ones for summary judgment under Rule 56, then dismissed the federal claims and remanded the state-law claims to state court.

First, the district court concluded that any pre-restraint excessive force claims brought by Knox conflicted with his resisting-arrest conviction and were barred by *Heck*. Turning to the post-restraint claims—wherein Knox claimed that the officers "continued to taser, push, and kneel on him, and twisted his arms over his head, injuring his shoulder"—the district court explained that the body-camera footage clearly discredited Knox's version of events. Relying on the footage, the court concluded that there was no post-

restraint excessive force. The court first explained that when the officers were applying the force at issue, "there was no 'cessation' of the misconduct which supported Mr. Knox's convictions." Second, it found that once the officers did successfully restrain Knox (and thus ended his resisting arrest), there was no evidence that Officer Jensen had *any* contact with Knox and no evidence that Officer Price exerted any significant force on Knox. In the alternative, the court held, the two were entitled to qualified immunity. Finally, the court found that Knox failed to state an excessive force claim or a failure-to-train-or-supervise claim against the City of Gautier.[1] Knox moved for reconsideration, which the district court denied. Now, he timely appeals.

Knox challenges the district court's holdings that (1) the video was sufficiently clear to discredit his factual allegations; (2) *Heck* barred his claims of excessive force prior to his being handcuffed; and (3) the officers would be entitled to qualified immunity should *Heck* not apply.[2]

## II. Standard of Review

"We review the district court's grant of summary judgment *de novo*." *Aguirre v. City of San Antonio*, 995 F.3d 395, 405 (5th Cir. 2021). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).

---

[1] Knox does not appeal the judgments regarding these claims, so we do not further address them.

[2] Because we affirm that Knox's claims are barred by *Heck*, we do not reach the district court's alternative holding based on qualified immunity.

## III. Analysis

Knox argues that the district court erred by applying *Heck* to bar claims arising from all acts of force prior to his being handcuffed rather than just the acts of force prior to his being wrestled to the ground.[3]

Knox contends that the district court erred in holding that *Heck* barred any excessive force claims until after he was handcuffed. In *Heck v. Humphrey*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. If so, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* If the conviction may co-exist with the § 1983 claim, however, *Heck* is no bar to suit. *See id.*; *Poole v. City of Shreveport*, 13 F.4th 420, 426-27 (5th Cir. 2021). A claim and conviction may co-exist if they are "temporally and conceptually distinct." *Poole*, 13 F.4th at 426-27 (quoting *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008)). "Accordingly, a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance." *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

Knox contends that his resisting-arrest conviction started and ended the moment he first "pulled away" from the officers. By the time he was on the ground, he had completely "given himself up." Therefore, he argues, the

---

[3] Knox also contends that the district court erred when it applied *Scott v. Harris* to the body-camera footage to discredit his allegation that he had ceased resisting arrest by the time he was pushed, tased, and twisted. Because we find the district court correctly found that *Heck* bars Knox's claims, we do not reach Knox's alternative argument.

district court erred by finding that the resisting-arrest conviction was premised on all of Knox's conduct up to and until getting handcuffed.

*Aucoin v. Cupil*, 958 F.3d 379 (5th Cir. 2020), provides an archetypal framework for examining a temporal argument like this one. There, the plaintiff, Aucoin, was found guilty of defiance, aggravated disobedience, and property destruction related to misconduct within his prison cell. *Id.* at 381. He then brought excessive force claims against the guards who detained him. *Id.* First, he alleged that the guards " 'snuck up' on him and sprayed him with a chemical agent" while he was in his cell. *Id.* Second, he alleged that, after he was removed from his cell, the guards took him to the showers and "maced" and beat him. *Id.* Applying *Heck*, we barred claims arising from the first incident but not the second. *Id.* Regarding the first incident, we explained that the underlying convictions were because:

> Aucoin disregarded repeated, direct orders . . . . He screamed profanities at the officers. He attempted to force a paper gown down the sink in an effort to flood the cell. And he spat in [an officer's] face. Only after the prisoner repeatedly refused to cooperate voluntarily did [an officer] deploy a one-second burst of chemical agent into the cell before restraining him.

*Id.* We found that because Aucoin was claiming the guards had snuck up on him, he was continuing to maintain his innocence. *Id.* at 383. That is to say, if we accepted that allegation as true, it would undermine and negate the facts that sustained his convictions. *Id.* Thus, it was *Heck* barred. *See id.* On the other hand, his second claim was premised on events that took place entirely outside of his cell and after the misconduct that supported his convictions had ceased. *Id.* at 383-84. Therefore, it was a temporally and conceptually distinct claim and could survive. *Id.*; *see also Bush*, 513 F.3d at 495, 498-99 (finding an excessive force claim distinct when plaintiff alleged that a

detective pushed her head through the rear window of a car after she was already arrested for resisting arrest and was otherwise compliant with the officers).

Here, like the first incident in *Aucoin*, we cannot accept Knox's contention that his misconduct started and ended when he initially pulled away from the officers without also implying that his state-court convictions are invalid. The circuit court did not rest its affirmance of Knox's convictions only on the fact that he pulled away from the officers, but also on his behavior once on the ground. The court took particular note of the fact that an officer believed he had to tase Knox to halt him and the fact that Knox was not detained until all three officers were involved—none of which occurred prior to Knox's being wrestled to the ground. Because the circuit court deemed Knox's on-the-ground conduct to be part and parcel of his conviction for resisting arrest, we cannot conclude that the officer's on-the-ground reactions were either temporally or conceptually distinct from his conviction. *Cf. Bush*, 513 F.3d at 498. Therefore, the district court did not err.

## IV. Conclusion

For the foregoing reasons, we AFFIRM.